**David NARMAH, Appellant,**

**v.**

**WALLER INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 01–08–00172–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 25, 2008.

---

Sylvia Cedillo, Prairie View, Ty Odell Clevenger, Bryan, TX, for Appellant.

Catherine B. Smith, Thomas Anderson Sage, Patrick W. Mizell, Persis Aspy Mehta, Vinson & Elkins, LLP, Houston, TX, for Appellee.

Panel consists of Justices TAFT, NUCHIA, and KEYES.

## OPINION

TIM TAFT, Justice.

This is a restricted appeal from a final declaratory judgment in a bond-validation suit. Appellee, Waller Independent School District ("WISD"), has moved to dismiss the restricted appeal of appellant, David Narmah. Both parties have fully briefed the jurisdictional issue. Concluding that Narmah may not take a restricted appeal from a judgment in this type of suit, we grant WISD's motion and dismiss the appeal. *See* TEX.R.APP. P. 42.3(a).

### Background

On March 13, 2008, this Court granted WISD's unopposed motion to consider, as the record in this appeal, the record from a related appeal, *Charleston v. Waller Independent School District,* which arose from the same suit, trial, and judgment. *See* 244 S.W.3d 555 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Because most of the appellate record in both appeals is thus identical, we take some of the background facts from the *Charleston* opinion, indicating by citation when we have done so.

As we noted in *Charleston:*

On May 12, 2007, WISD voters approved the sale of school bonds valued at $49.29 million for the "construction of a new elementary school, conversion of Waller Junior High and Schultz Middle School to 6–8 grade campuses, addition of office space for technology, renovation on all seven existing campuses, technology improvements, purchase [of] school buses, and the construction [of] a new District stadium."

*Id.* at 557. Dewayne Charleston, a Waller County taxpayer, sued WISD in Harris County to invalidate the bonds for various reasons. *See id.* On August 20, 2007, WISD filed, in Waller County, the underlying public-securities declaratory-judgment suit that is common both to this appeal and the *Charleston* appeal. *See id.* at 558. Charleston intervened in WISD's Waller County suit, which was tried on September 24, 2007. *See id.* On October 2, 2007, the trial court rendered judgment for WISD, declaring, among other things, that WISD was authorized to issue the securities; that the securities, when issued and executed as required by law, would be lawful, valid, and binding; that the court had confirmed and approved the securities; that the May 12, 2007 special election was legally and validly held; that the judgment was binding and conclusive on all class members, the Attorney General, the Comptroller, and "all other interested parties"; and that the judgment was a permanent injunction against future challenges to matters that were or could have been determined therein.

Charleston was eventually dismissed from the suit for failure to have filed a security bond. *See* TEX. GOV'T CODE ANN. § 1205.104(a) (Vernon 2000). Charleston's appeal to this Court is not relevant to the instant appeal except to render understandable an alternative argument of

WISD's that is mentioned below. What is relevant to the instant appeal is that, on January 7, 2008—just over three months after the final judgment was signed—Narmah, another taxpayer in Waller County, filed a notice of restricted appeal to the Texas Supreme Court, invoking the appellate provision of chapter 1205 of the Texas Government Code ("the Act"),[1] which chapter concerns public-security declaratory-judgment actions. *See* TEX. GOV'T CODE ANN. § 1205.068(b) (Vernon 2000) ("A party may take a direct appeal to the supreme court as provided by [Texas Government Code] Section 22.001(c)."); *id.* § 22.001(c) (Vernon 2004) ("An appeal may be taken directly to the supreme court from an order of a trial court granting or denying an interlocutory or permanent injunction on the ground of the constitutionality of a statute of this state.").

In early March 2008, however, Narmah filed a request with the supreme court to dismiss his notice of appeal, explaining as follows:

Mr. Narmah did not intend to file a regular appeal, but instead intended to file a restricted appeal from the trial court pursuant to Rules 30 and 57 of the Texas Rules of Appellate Procedure, and a restricted appeal from the Court of Appeals pursuant to Rule 30 of the same rules. Under Rule 26.1(c), a party filing a restricted appeal must submit the notice of appeal "within six months after the judgment or order is signed." Mr. Narmah filed his notice of appeal within the six-month limit. . . .

Upon review of *Mitchell v. Purolator Security, Inc.,* however, Mr. Narmah has concluded that it is unclear whether this court has jurisdiction to hear his claims on direct appeal. 515 S.W.2d 101, 104 (Tex.1974) (direct appeal dis-

---

1. *See* TEX. GOV'T CODE ANN. §§ 1205.001–.152 (Vernon 2000).

missed because injunction was not granted on constitutional grounds). On the other hand, Mr. Narmah may clearly file a restricted appeal to the Court of Appeals. Accordingly, he intends to file such a restricted appeal with the Court of Appeals not later than this week. Mr. Narmah therefore wishes to withdraw his Notice of Appeal to this Court and asks that the matter be dismissed.

Within days, Narmah filed a notice of appeal in the trial court, for appeal to the court of appeals, expressly reciting both that his was a "restricted appeal ... filed within six months after the judgment in this case was signed" and that "[p]ursuant to Section 1205.068(e) of the Texas Government Code [the appeal provision of Act], this appeal is governed by the rules of the Texas Supreme court for accelerated appeals in civil cases." Narmah's appeal was assigned to this Court. On March 11, 2008, Narmah filed an amended notice of appeal that removed any reference to the Act, reciting that he "wishes to clarify that this is a restricted appeal filed pursuant to Rule 30, and to further clarify that this appeal is *not* filed under Chapter 1205 of the Texas Government Code." (Emphasis in original.)

In his appellant's brief, Narmah complains that (1) "the trial court and this Court lacked personal jurisdiction over [Narmah] (and most other parties), therefore the orders, judgments, and mandate are void"; [2] (2) "State courts lack jurisdiction to enjoin parties from pursuing *in personam* claims in federal court, there-

fore the orders of the trial court are void"; (3) "Because [WISD] did not properly provide notice of its board of trustees meetings to the county clerk, as required by the Texas Open Meetings Act, the board's votes approving the bond election and the sale of the bonds should be voided"; and (4) "the trial court's judgment ordering the Attorney General to approve the bond was in error."

WISD has moved to dismiss Narmah's appeal, arguing that this court lacks subject-matter jurisdiction because (1) the Act allows only an accelerated appeal filed within 20 days of the judgment's signing, rather than a restricted appeal, and, alternatively, (2) Narmah, whom the Act makes a class member, in effect participated below through counsel for Charleston, thus precluding a restricted appeal in any event. Narmah replies that (1) the accelerated-appeal provision of the Act is not mutually exclusive with a restricted appeal, allowing him to pursue the latter if he meets its criteria, and (2) Charleston's counsel did not represent the statutory class below, so that Narmah's restricted appeal is not precluded for Narmah's having participated below through Charleston's counsel.

Of WISD's two arguments, we need to address only the first. That argument requires us to interpret the Act.

## Standard of Review

"Statutory interpretation is a question of law." *Cardinal Health Staffing Network, Inc. v. Bowen,* 106 S.W.3d 230, 237 (Tex.

---

**2.** Narmah's complaint is not that service by publication notice was defective in this case (indeed, the trial court's judgment recited that publication was properly accomplished), but is instead a complaint that service by publication notice, as allowed by the Act, is unconstitutional. *See* Tex. Gov't Code Ann. § 1205.043 (Vernon 2000) (providing that notice of filing of public-securities declaratory-judgment ac-

tion be given to class by publication). In support of the grounds for a restricted appeal-specifically, in support of his allegation that he did not participate at trial-Narmah attached to his amended notice of appeal a verification that he "did not see any published notice of trial setting." Narmah relied on this averment in support of this appellate issue.

App.-Houston [1st Dist.] 2003, no pet.). "We review questions of law ... *de novo*." *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 458 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

"Our primary goal is to ascertain and effectuate the Legislature's intent." *Cardinal Health Staffing Network, Inc.*, 106 S.W.3d at 237. In carrying out this duty, "we begin with the statute's plain language because we assume that the Legislature tried to say what it meant and, thus, that its words are the surest guide to its intent." *Id.* at 237–38. "In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses, but we instead examine the entire act." *Id.* at 238. "We may also consider, among other things, the statute's objectives; common law, former law, and similar provisions; and the consequences of the statutory construction." *Id.*

### Jurisdiction: Accelerated vs. Restricted Appeal Under the Act

■ Under the Act, an issuer [3] such as WISD may seek a declaratory judgment for determining the issuer's authority to issue public securities, the legality and validity of each public-security authorization relating to the public securities, the legality and validity of each expenditure or proposed expenditure of money relating to the public securities, and the legality and validity of the public securities themselves. TEX. GOV'T CODE ANN. § 1205.021(1)-(4) (Vernon 2000). The proceeding is in rem and is a class action; it is binding on all persons who reside in the issuer's territory, who own property that is located there-

in, who are taxpayers of the issuer, or who "have a claim of right, title, or interest in any property or money to be affected by the public security authorization or the issuance of the public securities." *Id.* § 1205.023 (Vernon 2000). Once the court has given notice of the bringing of the action as required by the Act, each person named above is made a party to the action, and "the court has jurisdiction over each person to the same extent as if that person were individually named and personally served in the action." *Id.* § 1205.044(2) (Vernon 2000). One made a party by such notice may answer or intervene in the action. *Id.* § 1205.062 (Vernon 2000).

■ An action under the Act is "a cause of action or a civil suit" that is "governed by the Rules of Civil Procedure promulgated by the Supreme Court *except insofar as specific changes are made by [the Act]*." *Hatten v. City of Houston*, 373 S.W.2d 525, 533, 535 (Tex.Civ.App.-Houston 1963, writ ref'd n.r.e.) (emphasis added). The Act itself provides that "[t]o the extent of a conflict or inconsistency between this chapter [the Act] and another law, this chapter controls." TEX. GOV'T CODE ANN. § 1205.002(a) (Vernon 2000).

■ The purpose of the Act is to provide a "speedy final resolution of all contestants' claims" in public-securities declaratory-judgment proceedings and to dispose of such proceedings "with dispatch." *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 150–51 (Tex.1982). "[I]t is apparent that the Legislature, in enacting [the Act's predecessor], intended to provide a *method of adjudicating the validity of public securities which would be more efficient and quicker than the proce-

**3.** The Act defines issuer as "an agency, authority, board, body politic, commission, department, district, instrumentality, municipality or other political subdivision, or public corporation of this state," including "a state-supported institution of higher education and any other type of political or governmental entity of this state." TEX. GOV'T CODE ANN. § 1205.001(1) (Vernon 2000).

dures theretofore available," *i.e.*, the Legislature intended by the Act to provide "a speedy termination of this type of litigation." *Hatten*, 373 S.W.2d at 534–35.

This purpose is reflected throughout the Act's provisions. For example, the trial court must try the action "with the least possible delay." Tex. Gov't Code Ann. § 1205.065(a) (Vernon 2000). No legislative continuance is allowed, as might otherwise apply under the Texas Rules of Civil Procedure and the Texas Civil Practice and Remedies Code. *Id.* § 1205.069 (Vernon 2000); *see* Tex. Civ. Prac. & Rem.Code Ann. § 30.003(b) (Vernon Supp.2007); Tex.R. Civ. P. 254. The trial court may, before entry of final judgment, grant the issuer's motion to require that any opposing party other than the Attorney General be dismissed unless that person files a bond with sufficient surety "for any damage or cost that may occur because of the delay caused by the continued participation of the opposing party or intervenor in the action if the issuer finally prevails...." Tex. Gov't Code Ann. § 1205.101(a) (Vernon 2000). If bond is granted but not filed within 11 days, the court must dismiss the opposing party or intervenor. *Id.* § 1205.104(a) (Vernon 2000).

The same legislative purpose is reflected in the Act's provisions concerning appeal and effect of final declaratory judgment. For instance, the declaratory judgment rendered by the trial court may be appealed to either the court of appeals or to the supreme court, depending on the challenges raised, but in either case, the appeal is "governed by the rules of the supreme court for accelerated appeals in civil cases and takes priority over any other matter, other than writs of habeas corpus, pending in the appellate court." *Id.* § 1205.068(d), (e) (Vernon 2000). The rules applicable to accelerated appeals in

civil cases require that the appeal be perfected no more than 20 days after the judgment is signed. *See* Tex.R.App. P. 26.1(b) ("[I]n an accelerated appeal, the notice of appeal must be filed within 20 days after the judgment or order is signed."); Tex.R.App. P. 57.1 ("Except when inconsistent with a statute or this rule, the rules governing appeals to courts of appeals also apply to direct appeals to the Supreme Court."). The appellate court is expressly instructed to "render its final order or judgment with the least possible delay." Tex. Gov't Code Ann. § 1205.068(e); *see id.* § 1205.105 (Vernon 2000) (invoking section 1205.068's procedure and expedited timetable for appeal from setting of bond or dismissal for failure to post bond in public-securities declaratory-judgment action). Finally, a final judgment in such a public-securities declaratory-judgment action is, as to each matter that was or could have been adjudicated, binding and conclusive against the issuer, the Attorney General, the Comptroller, and any party to the action and functions as a permanent injunction against "the filing by any person of any proceeding contesting the validity" of various matters related to the adjudication or to the securities. *Id.* § 1205.151(b), (c) (Vernon 2000).

WISD first argues that an accelerated appeal under section 1205.068(e) and Texas Rule of Appellate Procedure 26.1(b) is the exclusive way to appeal a final declaratory judgment to an intermediate appellate court under the Act. Therefore, argues WISD, Narmah may not take a restricted appeal from the judgment. WISD opines that construing section 1205.068 to allow taxpayers like Narmah to take a restricted appeal would eviscerate the speedy and final determination that the Legislature intended for proceedings under the Act. This issue that WISD raises appears to be one of first impression.

The Legislature clearly intended for all requirements of the Act to be speedily conducted, and with good reason: with extended litigation, public improvements could be delayed, precluded, or rendered far more expensive. *Cf. Leonard v. Cornyn*, 47 S.W.3d 524, 528 (Tex.App.-Austin 1999, pet. denied) (stating same with regard to statute requiring Attorney General's approval of bonds, when statute provided that said approval, plus subsequent registration of bonds, rendered bonds valid, binding, enforceable, and incontestable in any court or other forum for any reason). This is why the Legislature provided that "[a]n appeal under this section [1205.068] is governed by the rules ... for accelerated appeals" and that such an appeal would take priority in the appellate court over all matters except habeas corpus. Tex. Gov't Code Ann. § 1205.068(e).

■ The rules for accelerated appeals provide that the appellant perfect his appeal within 20 days after the judgment is signed. Tex.R.App. P. 26.1(b). In contrast, a party meeting certain conditions[4] may take a restricted appeal in a civil case within six months after the judgment is signed. Tex.R.App. P. 26.1(c). Given the vast difference in the time to perfect accelerated and restricted appeals, as well as the Act's overarching purposes, there is but one reasonable reading of section 1205.068: that the Legislature intended that any party appealing an order or judgment rendered in a suit brought under the Act do so under the rules for accelerated appeals, including the 20–day timeline for perfecting such an appeal. *See* Tex. Gov't Code Ann. § 1205.068(a), (e). We reach this conclusion because the Act's dual purposes of speedy determination and finality would be completely undermined by allowing a restricted appeal: a restricted appeal could be perfected any time within six months after the judgment's rendition, whereas every provision of the Act is geared to providing the fastest adjudication possible. In light of these purposes of the Act, it is significant that section 1205.068(e) mentions only accelerated appeals. We believe that the Legislature mentioned only accelerated appeals because it meant to allow only accelerated appeals. Given the purposes of the Act, had the Legislature meant to allow far slower restricted appeals, it would have mentioned them expressly; it did not.

We recognize that a public-securities declaratory-judgment action is a "civil suit," which is "governed by the Rules of Civil Procedure" generally, *Hatten*, 373 S.W.2d at 533, 535, and also that restricted appeals are generally allowed in civil suits, *see* Tex.R.App. P. 26.1(c). Nonetheless, the Act's provisions control when the rules generally applicable to civil suits are inconsistent with its provisions. *See* Tex. Gov't Code Ann. § 1205.002(a) ("To the extent of a conflict or inconsistency between this chapter and another law, this chapter controls."); *Hatten*, 373 S.W.2d at 535. In reviewing whether rule 26.1(c) and the Act's appellate provision are inconsistent, we do not read the Act's appellate provision in a vacuum, but instead with an eye toward the purpose of the Act: that a speedy and final determination be made. *See Cardinal Health Staffing Network, Inc.*, 106 S.W.3d at 238 (providing that appellate court construing statute may consider "the statute's objectives" and "the consequences of the statutory construc-

---

4. "A party who did not participate—either in person or through counsel—in the hearing that resulted in the judgment complained of and who did not timely file a postjudgment motion or request for findings of fact and conclusions of law, or a notice of appeal within the time permitted by Rule 26.1(a), may file a notice of appeal within the time permitted by Rule 26.1(c)." Tex.R.App. P. 30.

tion"). The Act requires a speedy appeal and resolution; restricted appeals circumvent these objectives. We thus conclude that Texas Rules of Appellate procedure 26.1(c) and 30 are inconsistent with section 1205.068(e) of the Act, so that section 1205.068(e) controls in an appeal from a judgment rendered under the Act. *See* TEX. GOV'T CODE ANN. § 1205.002(a).

For all of these reasons, we hold that the Act's plain language precludes restricted appeals from the judgments and orders that the Act allows to be appealed. *See id.* § 1205.068(a), (e); *cf., e.g., Buckler v. Turbeville*, 17 Tex.Civ.App. 120, 123, 43 S.W. 810, 811 (Tex.Civ.App.-Dallas 1897, writ dism'd w.o.j.) (in concluding that writ of error could not be used to appeal judgment in election proceeding, when election-contest appeals were given statutory precedence in appellate courts over other matters, reasoning, "We think it clearly appears that it was the intention of our lawmakers that controversies over elections should be speedily terminated, and for this reason the writ of error was not provided as the means of revising trials in contested elections.... Why make all these provisions to secure a hasty termination of the controversy, and at the same time give 12 months in which to carry the case up by writ of error?"); [5] *cf. also City of Lubbock v. Isom*, 615 S.W.2d 171, 172 (Tex.1981) (holding that no bill of review could be taken by party to action in which public-securities declaratory judgment was rendered because that party had not appealed, which statutorily barred that party from filing bill-of-review proceeding). We thus hold that we lack jurisdiction over Narmah's restricted appeal. Because we lack jurisdiction over Narmah's restricted appeal, we may not consider any of his appellate challenges relating to the underlying judgment, including those issues contending that the judgment is void and that notice by publication is generally unconstitutional, which he contends render the underlying judgment void. *See Rio Grande Valley Sugar Growers, Inc. v. Attorney Gen. of Tex.*, 670 S.W.2d 399, 402 (Tex. App.-Austin 1984, writ ref'd n.r.e.) (dismissing appeal in suit brought under the Act for lack of subject-matter jurisdiction and thus not reaching appellant's constitutional challenge to predecessor of the Act); *see also Lund v. State*, 163 Tex. 102, 103, 352 S.W.2d 457, 458 (Tex.1962) ("Because of the failure to file a timely motion for new trial, the appeal failed and the Court of Civil Appeals was without jurisdiction to determine whether or not the trial court's judgment is void."); *Prairie View A & M Univ. v. Dickens*, 243 S.W.3d 732, 736

---

**5.** The *Buckler* court, like the courts following it, based its holding in part on the premise that election-contest cases were not "civil cases" within the meaning of the Texas Constitution, so that the statute's providing that a party could appeal "under the same rules and regulations as are provided for appeals in civil cases, and such cases shall have precedence ... over all other cases" meant only appeals, not writs of error (now called restricted appeals). *Buckler v. Turbeville*, 17 Tex.Civ.App. 120, 121–22, 43 S.W. 810, 810–11 (Tex.Civ.App.-Dallas 1897, writ dism'd w.o.j.). This Court has already held that, unlike election-contest cases, cases brought for declaratory judgment under the Act *are* "civil cases"—which renders the *Buckler* court's reasoning *referenced in this footnote* inapposite. *See Hatten v. City of Houston*, 373 S.W.2d 525, 533, 535 (Tex.Civ.App.-Houston 1963, writ ref'd n.r.e.) (providing that action under the Act is "a cause of action or a civil suit" that is "governed by the Rules of Civil Procedure promulgated by the Supreme Court except insofar as specific changes are made by [the Act]"; distinguishing election-contest cases because supreme court had held that they were not "civil cases"). However, the *Buckler* court's reasoning *on which we have relied in the opinion's text* is separate from that cited in this footnote and does support our conclusion by analogy. *See Buckler,* 17 Tex.Civ.App. at 123, 43 S.W. at 811.

(Tex.App.-Houston [14th Dist.] 2007, no pet.) ("Even if a trial court signs an interlocutory order that is void for lack of subject-matter jurisdiction, this court still has no jurisdiction to entertain an interlocutory appeal from that order absent statutory authority.").

Narmah raises three arguments in response. First, he asserts that his appeal is not brought under the Act, but is instead brought as a restricted appeal, as his amended notice of appeal in this Court demonstrates. We agree with this characterization of his appeal, but this is exactly the problem. As we have held above, one cannot invoke the rules for restricted appeals to challenge a judgment rendered in a suit under the Act. Rather, one must appeal in accordance with section 1205.068 of the Act, which invokes the rules for accelerated appeals, not those for restricted appeals. Accordingly, Narmah cannot use a restricted appeal to do what the Act requires be done by accelerated appeal.

Second, Narmah asserts that "[i]n Section 1205.068 itself, nothing in the text purports to foreclose other avenues of relief such as restricted appeals or writs of mandamus." But the Act expressly provides that its provisions control to the extent that they *conflict or are inconsistent* with any other law. *See* TEX. GOV'T CODE ANN. § 1205.002(a). We have held above that the appellate rules allowing restricted appeals in civil cases generally are inconsistent both with the Act's purposes and with its appellate provisions. Accordingly, even though section 1205.068 itself does not expressly state that restricted appeals are foreclosed, that was the Legislature's intent, as revealed in the Act's plain language.

Third, Narmah argues that "[i]n the present case, [he] didn't even have the option of filing an accelerated appeal *because he was not a named party*, thus a restricted appeal or a writ of mandamus *are his only avenues of relief.*" (Emphasis added.) From this premise, Narmah concludes that "[a]s a matter of constitutional necessity, these avenues of relief must be preserved or *non-parties* will have no means of attacking facially void judgments against them." (Emphasis added.) Narmah's argument is contrary to the Act's plain language, which expressly makes taxpayers (like Narmah), to whom the required publication notice is given, class members in these actions; expressly makes them parties to the action after the required notice is given, so that the court "has jurisdiction over each person to the same extent as if that person were individually named and personally served in the action"; and renders judgments in these actions binding and conclusive on these individuals, whether or not they were actually named in the proceeding. *See* TEX. GOV'T CODE ANN. §§ 1205.023(2)(c), 1205.041, 1205.043, 1205.044, 1205.151(b), (c). Although parties to whom the required publication notice is given may answer or intervene, they do not have to do so for the above effects to occur. *See id.* §§ 1205.044, 1205.062. Finally, the Act allows "[a]ny party to an action under this chapter" to appeal the judgment-and, as we have explained above, "a party" includes a statutory class member to whom the required notice was given, even *if that* person was not individually named, did not answer, or did not intervene. *See id.* § 1205.068(a). Narmah was thus eligible to have taken an accelerated appeal from the final judgment under the authority of section 1205.068.[6]

---

**6.** We note that Narmah asserts-in his appellate brief's challenge that the Act's publication

notice is unconstitutional, supported by the verification attached to his amended notice of

## Conclusion

We grant WISD's motion and dismiss the restricted appeal for want of subject-matter jurisdiction.

appeal-that he did not actually see the notice of trial setting published in the newspaper. Whether he actually saw the notice is immaterial to our conclusion that he was a party who could have taken an accelerated appeal: the statute allows notice by publication and provides that that notice is as effective as personal service on the designated persons, and the trial court found that publication notice was properly accomplished here. *See* TEX. GOV'T CODE ANN. §§ 1205.041, 1205.043, 1205.044 (Vernon 2000). To the extent that Narmah relies on lack of actual knowledge in support of his challenge that notice by publication under the Act is unconstitutional, we cannot determine the merits of any such challenge without first having subject-matter jurisdiction to do so. *See Rio Grande Valley Sugar Growers, Inc. v. Attorney Gen. of Tex.*, 670 S.W.2d 399, 402 (Tex.App.-Austin 1984, writ ref'd n.r.e.); *see also Lund v. State*, 163 Tex. 102, 103, 352 S.W.2d 457, 458 (Tex.1962); *Prairie View A & M Univ. v. Dickens*, 243 S.W.3d 732, 736 (Tex.App.-Houston [14th Dist.] 2007, no pet.). A restricted appeal invests us with no such jurisdiction.