# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00109-CV
NO. 03-14-00139-CV

**George Alejos, Appellant**

**v.**

**The State of Texas and VIA Metropolitan Transit Advanced Transportation District, Appellees**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GN-13-004230, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

**O P I N I O N**

These consolidated causes are both expedited appeals under chapter 1205 of the Government Code, which creates a special proceeding whereby "issuers" of "public securities" can obtain a declaratory judgment—also expedited—as to the legality or validity of such securities and related official acts.[1] In Cause Number 03-14-00109-CV (the "Judgment Appeal"), George Alejos seeks to appeal a final judgment validating the issuance of approximately $33 million in sales tax revenue-backed bonds by the appellee, VIA Metropolitan Transit Advanced Transportation District (the District).[2] In Cause Number 03-14-00139-CV (the "Bond Appeal"), Alejos appeals a subsequent order conditioning his continued participation in the litigation on his posting of a

---

[1] *See* Tex. Gov't Code §§ 1205.001–.152; *Hotze v. City of Houston*, 339 S.W.3d 809, 814–15 (Tex. App.—Austin 2011, no pet.).

[2] *See* Tex. Gov't Code §§ 1205.065(a)(2) (directing trial court to render judgment), .068(a)(2) (providing for appeal of trial court's final judgment).

$3.6 million bond, the amount the district court found to represent any damage or cost that may occur because of the delay caused by Alejos's continued participation.[3] For reasons we will explain shortly, we will reverse the district court's order that is the subject of the Bond Appeal and remand for further proceedings on that issue. In the interim, the Judgment Appeal will remain pending.

**THE ISSUES PRESENTED**

The Legislature has instructed us that expedited appeals under chapter 1205 are to be even more expedited than the panoply of other expedited appeals that Texas courts of appeals handle nowadays,[4] and thus we will cut to the chase of our analysis without crafting a comprehensive explanation of the case's underlying facts and procedural history, with which we can assume the litigants and any other interested persons are familiar. We will similarly assume that any readers are conversant with the basic procedural framework prescribed by chapter 1205 and the standards that govern our review. However, we briefly note—because it eventually becomes relevant to our analysis—that this litigation arises in the context of broader public policy disputes concerning the use of public funds to finance the construction of transportation infrastructure in the San Antonio area and, in particular, an ongoing initiative by the metropolitan transit authority serving that area, the VIA Metropolitan Transit Authority, to plan and construct a "modern streetcar" system. The legal dispute is essentially about whether VIA can lawfully tap sales-tax revenues raised by the District—a separate governmental body formed by VIA with voter approval, and with an identical

---

[3] *See id*. §§ 1205.068(a)(1) (allowing appeal of an order setting bond), .101 (allowing issuer to seek bond from opposing party), .103 (amount of bond).

[4] *See id*. § 1205.068(e) (providing that appeal "takes priority over" everything except writs of habeas corpus and directing court to "render its final judgment order or judgment with the least possible delay").

2

governing board, that serves as a means of financing certain "advanced transportation" and "mobility enhancement" projects through the imposition of an additional sales tax within the City of San Antonio[5]—to construct "multi-modal" transportation "hubs" that may (or, according to opponents, are intended to) someday serve as components of the streetcar system.

The key events framing the legal issues presented on appeal are these:

- The District resolved to issue approximately $33 million in bonds, backed by the sales tax revenues it receives,[6] to finance projects that included two multi-modal transportation hubs.

- Before issuing the bonds, the District was required to obtain legal approval (also described as "preclearance") from the Office of the Texas Attorney General.[7] The Attorney General declined to approve the bonds, asserting that such use of the sales-tax revenues raised by the District would violate a binding commitment made by VIA at the time of the District's formation that those revenues would not be used to finance "light rail projects."

- The District filed suit under chapter 1205 to obtain a judicial declaration validating the legality of the bonds.[8] The Attorney General answered and disputed the District's claim.[9]

---

[5] *See generally* Tex. Transp. Code §§ 451.701–.709 ("Advanced Transportation District").

[6] The District retains one-half of the sales-tax revenues to finance its own "advanced transportation" and "mobility enhancement" projects, but must remit one-fourth to any "participating" governmental units (here, solely the City of San Antonio) for use in their authorized projects and retain the remaining one-fourth in an account for use as matching funds required for obtaining state and federal grants in connection with authorized projects. *See id.* § 451.702(e). The bonds here are to be secured by revenues from the District's one-half share.

[7] *See* Tex. Gov't Code § 1202.003; Tex. Transp. Code § 451.355(b).

[8] *See* Tex. Gov't Code § 1205.021. There is no dispute that the District is an "issuer" of "public securities" who can bring such an action. *See id.* § 1205.001(1)–(2) (defining both terms).

[9] *See id.* § 1205.063(a) (describing Attorney General's duties in public security declaratory judgment actions).

3

- These parties proceeded to trial, which was concluded with a final judgment in the District's favor.[10] The Attorney General's Office ultimately agreed to the final judgment and expressly waived "any right to appeal or otherwise seek relief from this final judgment."

- Although chapter 1205-compliant notice was provided of their opportunity to do so, no additional parties filed an answer before trial concluded, nor otherwise attempted to participate directly in the proceedings before the district court signed the final judgment.[11]

- However, George Alejos, who falls within the mandatory class of "interested persons" who are bound by the final judgment,[12] timely filed a notice of appeal purporting to challenge that judgment.[13] As previously indicated, we docketed this appeal as Cause No. 03-14-00109-CV, i.e., the Judgment Appeal.

- At the inception of its suit, the District had filed a motion invoking chapter 1205's bond requirement as to any "opposing party or intervenor" other than the Attorney General.[14] After Alejos filed his notice of appeal, and while the district court still retained plenary power over its judgment, the District filed a motion opposing what it characterized as an intervention by Alejos without the required leave of court[15] and, alternatively, a motion to set bond as a condition for his continued participation in the litigation.

- In response to the District's motion, Alejos insisted that he was not attempting to intervene in the proceeding before the district court and that he was not required to do so in order to appeal the judgment. He similarly contended that he was not subject to chapter 1205's bond requirement because it applied only to persons who had answered or intervened in the suit prior to final judgment.

- Still within its plenary power, the district court held a telephonic hearing and signed an Order Setting Bond disposing of the District's motions. In its order, the court noted that

---

[10] *See id.* § 1205.065(a) (directing trial court to determine each legal or factual question and render final judgment).

[11] *See id.* §§ 1205.041 (requiring notice to interested persons), .044 (effect of notice), .062 (providing that noticed person may become "named party" by answer or intervention).

[12] *See id.* §§ 1205.041, .151(b) (judgment is binding against noticed persons).

[13] *See id.* § 1205.068(a)(2) (allowing any party to action to appeal trial court's judgment).

[14] *See id.* §§ 1205.101–.105 ("Security for Issuer").

[15] *See id.* § 1205.062 (allowing "interested person" to become "named party" by either filing answer on or before trial date or "intervening, with leave of court, after the trial date").

4

Alejos had not filed a motion to intervene and that his counsel "both disavowed any claim that Mr. Alejos is an intervenor and represented to the court that he would not file a motion to intervene on behalf of Mr. Alejos." "As neither a named party nor an intervenor," the district court continued, "Mr. Alejos and his counsel were not permitted to argue, make objection, or present evidence regarding the motion before the Court." However, the court proceeded to grant the District's motion to set bond, heard evidence from it on that issue, and set a bond in the amount of $3.6 million as a condition on Alejos's continued participation in the litigation.[16]

- It is undisputed that Alejos did not post this bond by the statutory deadline eleven days thereafter.[17] Instead, he timely perfected an appeal from the district court's order setting bond,[18] which we docketed as Cause No. 03-14-00139-CV, i.e., the Bond Appeal.

Alejos brings two issues on appeal, one addressed to each cause. In his first issue, he urges us to reverse the district court's Order Setting Bond based on asserted procedural irregularities. In his second issue, Alejos challenges the district court's final judgment on the merits. In addition to contesting Alejos's appellate issues, the District has moved to dismiss the Judgment Appeal on two jurisdictional grounds: (1) Alejos is not among the "parties" whom the Legislature has empowered to appeal the final judgment;[19] and (2) Alejos has not complied with the Order Setting Bond. Inasmuch as the District has questioned our jurisdiction, we should address its motion first.

---

[16] See id. §§ 1205.101 (allowing issuer to request bond), .103 (amount of bond).

[17] See id. § 1205.104(a) (requiring court to dismiss unless bond filed "before 11th day after" order setting bond amount).

[18] See id. §§ 1205.068(a)(1) (allowing appeal of bond order), .105 (same).

[19] See id. § 1205.068(a) (allowing "[a]ny party" to appeal).

5

## "PARTY" STATUS

The parties agree that, as a threshold matter, Alejos has the right to bring his appeals only if he satisfies section 1205.068 of chapter 1205, which states that "[*a*]*ny party* to an action under this chapter may appeal to the appropriate court of appeals" "the judgment rendered by the trial court," an order setting bond, or an order of dismissal for failure to comply with an order setting bond.[20] The Legislature did not provide an explicit definition of "party" as used in section 1205.068, and a clear-cut "ordinary" or "plain" meaning of that term is potentially elusive.[21] As then-Justice Hecht recently observed in a different statutory context, "the meaning of 'party' in the abstract" can conceivably range from persons who actually participate personally in litigation, to those named in pleadings but who are never served nor appear, to non-participants who are not even named but are deemed to be parties through the virtual-representation doctrine.[22] But we are to construe statutory language in context,[23] and in doing so we observe that the Legislature uses "party" elsewhere in chapter 1205 to describe several different categories of persons whom it views as having an interest in proceedings under that chapter—indeed, virtually every type of "party" Justice Hecht identified:

---

[20] *Id*. (emphasis added); *see id*. §§ 1205.103–.104 (providing for amount of bond and dismissal for failure to file bond amount).

[21] *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010) ("We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results.").

[22] *Zanchi v. Lane*, 408 S.W.3d 373, 381 (Tex. 2013) (Hecht, J., concurring).

[23] *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011) ("We generally avoid construing individual provisions of a statute in isolation from the statute as a whole.").

- One "party" the Legislature identifies is the Attorney General, who generally must be served personally with the petition[24] and who "shall examine" the petition and "raise appropriate defenses."[25]

- Another category of "party" consists of a class whom the Legislature considers to be "interested" in the validation petition and judgment. The Legislature has specified that a suit under chapter 1205 is "a proceeding in rem"[26]—a phrase that would ordinarily denote adjudication of the legal status of the securities themselves and not merely the personal rights of specific parties before the court[27]—and a "class action binding on all persons who: (A) reside in the territory of the issuer; (B) own property located within the boundaries of the issuer; (C) are taxpayers of the issuer; or (D) have or claim a right, title, or interest in any property or money to be affected by the public security authorization or the issuance of public securities."[28] The Legislature terms this class of persons "interested parties" and requires they be given notice by publication of the trial setting and the opportunity to be heard there.[29] It has further provided that the effect of this notice, importantly, is that each class member is deemed "a party to the action" and that the court is deemed to possess "jurisdiction over each person to the same extent as if that person were individually named and personally served in the action."[30] Such "parties" are likewise deemed to be bound by the final judgment.[31]

---

[24] *See* Tex. Gov't Code § 1205.042.

[25] *Id*. § 1205.063(a); *see id*. §§ 1205.063(b) (if Attorney General "does not question" the securities, he may "state that belief" and, "on a finding by the court to that effect, be dismissed as a party"), .101(a) (bond requirement made applicable to "any opposing party or intervenor, other than the attorney general").

[26] *Id*. § 1205.023(1).

[27] *See Black's Law Dictionary* 864 (9th ed. 2009) (defining "in rem" as "involving or determining the status of a thing, and therefore the rights of persons generally with respect to that thing").

[28] Tex. Gov't Code § 1205.023(2).

[29] *Id*. §§ 1205.041 (notice), .043 (by publication).

[30] *Id*. § 1205.044 (effect of notice by publication).

[31] *See id*. § 1205.151(b)(4) (judgment is "binding and conclusive" against "any party to the action, whether (A) named and served with the notice of the proceedings; or (B) described by Section 1205.041(a)").

- A third category of "parties" contemplated by the Legislature consists of class members who opt to become "named parties." A class member may "become a named party" either by (1) filing an answer to the petition at or before the time set for trial in the notice; or (2) "intervening, with leave of court, after the trial date."[32]

- A final permutation in the Legislature's use of "party" within chapter 1205 appears in the provisions relating to the bond requirement, contained in subchapter E. The bond requirement imposes conditions on the continued personal participation in the litigation of "any opposing party or intervenor, other than the attorney general."[33] Subchapter E further requires that notice and a motion to set bond be personally served on "the opposing party, the intervenor, or the party's attorney,"[34] which would seem to confirm both that "party" includes both "opposing parties" and intervenors and that an "opposing party" would not include an "interested party" class member who has been entirely absent from the litigation.

The gravamen of the District's dismissal motion is that the Legislature surely intended "party" in the context of section 1205.068's appeal right to mean only persons who personally participate in the trial court proceedings—i.e., with respect to members of the class of "interested parties," only those who file answers or intervene so as to become "named parties"—and not class members like Alejos who, while deemed a "party" under chapter 1205 in the sense of being bound by the proceedings, have remained mere spectators through final judgment. The District first relies on background decisional law, of which courts can presume the Legislature was aware in crafting chapter 1205 and its statutory predecessors.[35] The District emphasizes the general rule that an appeal

---

[32] *Id*. § 1205.062.

[33] *Id*. § 1205.101(a).

[34] *Id*. § 1205.101(b).

[35] *See Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.) ("[W]e assume that when enacting a statute, the legislature was aware of the background law and acted with reference to it.") (citing *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)).

8

can be brought only by a named party to a suit.[36]  To the extent unnamed class members have been permitted to appeal under Texas law, the District further suggests, that right has derived from some unique injury to the particular member with respect to which the member preserved error before the trial court, such as by timely objecting to a class settlement.[37]

Alejos counters that the District is attempting to read limitations into "party" under section 1205.068 that the Legislature did not itself choose to include.  He emphasizes that the Legislature used "any party" to describe the class of potential appellants in section 1205.068, not "*named* party" or "party" with some other qualification or limitation, but just "party."  This phraseology, Alejos reasons, reflects unambiguous legislative intent to include any and all "parties" under chapter 1205 in the class of potential appellants under section 1205.068, including all other members of the class of "interested parties"—each of whom, again, the Legislature explicitly deems "a party to the action"[38]—not just those who file answers or intervene so as to become "named parties."[39]  Further, while maintaining that chapter 1205 is *sui generis*, Alejos points out that Texas virtual-representation concepts have sometimes been applied to allow unnamed parties to formally enter the litigation for the first time on appeal in circumstances where the named party formerly representing their interests settles or the interests otherwise diverge.[40]  What the Texas Supreme

---

[36]  *See, e.g.*, *Gunn v. Cavanaugh*, 391 S.W.2d 723, 724 (Tex. 1965).

[37]  *See City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 754–56 (Tex. 2003) (citing *Devlin v. Scardelletti*, 536 U.S. 1, 8–11 (2002)).

[38]  *See* Tex. Gov't Code § 1205.044.

[39]  *See id*. § 1205.062.

[40]  *See, e.g.*, *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 723–29 (Tex. 2006); *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d 108, 110–11 (Tex. 1999).

Court has termed the "most important consideration" in this analysis, Alejos observes, "is whether the appellant is bound by the judgment,"[41] and that is certainly true for him here.[42] In short, Alejos suggests that if virtual representation concepts are relevant to our construction of "party" in section 1205.068, they confirm that the notion of an "interested party" class member being allowed to personally participate in the litigation for the first time on appeal is hardly unknown to Texas law or beyond the conceivable intent of the Legislature.

In reply, the District posits that even if "party" under section 1205.068 would otherwise unambiguously include class member "parties" like Alejos who did not participate personally in the trial court proceedings, the sheer number of individuals who could be potential appellants under this construction reveal it to be an "absurd result" that the Legislature could not have intended.[43] With respect to the bonds it seeks to issue here, the District observes, the class of "interested parties" (and potential appellants) would include over one million San Antonio residents and property owners,[44] not to mention anyone else who pays sales taxes to the District (e.g., the many out-of-town visitors to the Alamo or Sea World who make purchases there[45]). The District urges that construing the "parties" who can appeal under section 1205.068 to include anyone (and, conceivably,

_____

[41] *City of San Benito*, 109 S.W.3d at 755.

[42] *See* Tex. Gov't Code § 1205.151(b)(4)(B) (binding noticed parties).

[43] *See Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) (declining to interpret statute in manner that would lead to absurd results) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) ("[W]e construe the statute's words according to their plain and common meaning . . . unless such a construction leads to absurd results.")).

[44] *See* Tex. Gov't Code § 1205.023(2)(A) ("reside in the territory of the issuer"), (B) ("own property located within the boundaries of the issuer").

[45] *See id*. § 1205.023(2)(C) ("taxpayers of the issuer").

everyone) in this vast class, even those who had never previously participated personally in the litigation, would subvert a fundamental public policy long recognized as underlying chapter 1205 as a whole—to "quickly and efficiently" resolve controversies regarding the legal validity of public securities and related official acts,[46] controversies whose mere existence are tantamount to temporary injunctions barring such securities' issuance.[47] In addition to urging that this potential perceived parade-of-horribles demonstrates an "absurd result," the District suggests that "party" may be ambiguous and that we should construe it in line with these recognized legislative policy goals.[48] Alejos responds that the District is instead inviting us to second-guess the legislative policy decisions reflected in the unambiguous statutory text.

We agree with Alejos for at least three related reasons. The first—and most critical—is the unambiguous statutory text.[49] As Alejos emphasizes, the Legislature quite plainly allowed "***any party*** to an action under this chapter" to appeal under section 1205.068—not just "named parties" who participate personally in the trial-level proceedings—and elsewhere it unequivocally stated that each member of the "interested party" class, however multitudinous that

---

[46] *See, e.g.*, *Hotze*, 339 S.W.3d at 814 (citing *Rio Grande Valley Sugar Growers, Inc. v. Attorney Gen. of Tex.*, 670 S.W.2d 399, 401 (Tex. App.—Austin 1984, writ ref'd n.r.e.)).

[47] *See Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 149 (Tex. 1982). In this respect, as succinctly observed by Chief Justice Pope (evidently quoting the *Glaser* trial judge, the late Don Humble), the statute was intended "to stop 'the age old practice allowing one disgruntled taxpayer to stop the entire bond issue by simply filing suit.'" *Id.*; *see generally Glaser v. Buckholts Indep. Sch. Dist.*, 625 S.W.2d 419 (Tex. Civ. App.—Austin 1981), *rev'd*, 632 S.W.2d 146.

[48] *Cf. Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 442–43 (acknowledging that legislative history may inform statute's meaning, but declining to consider legislative history where statute at issue was unambiguous).

[49] *See DeQueen*, 325 S.W.3d at 638–39 (relying solely on statutory text and declining to consider canons of construction in interpreting statute where statute at issue was unambiguous).

class might be, is deemed "a party to the action." When construing statutes, we presume that the Legislature chose its language with care, with each word included (or omitted) purposefully,[50] and we can only conclude from the Legislature's chosen language in chapter 1205 that it intended to include each member of the "interested party" class among the "parties" who may bring appeals under section 1205.068. In this regard, we note that the First Court of Appeals—apparently the only court to have addressed such an issue previously—reached the same conclusion, albeit in a slightly different procedural context.[51] The appellant, who was among the class of "interested parties" but had not participated personally in the proceedings before the trial court, sought to bring a restricted appeal to challenge the trial court judgment, arguing in part that he was constitutionally entitled to the restricted-appeal remedy because the expedited appeal under chapter 1205 was available solely to "named parties."[52] In rejecting that contention, the First Court determined that, despite not having participated personally at trial, the appellant had been eligible to bring the accelerated appeal authorized by chapter 1205, and had failed to do so. Its reasoning was similar to our own:

> [The appellant's] argument is contrary to [chapter 1205's] plain language, which expressly makes taxpayers (like [the appellant]), to whom the required publication notice is given, class members in these actions; expressly makes them parties to the action after the required notice is given, so that the court "has jurisdiction over each person to the same extent as if that person were individually named and personally served in the action"; and renders judgments in these actions binding and conclusive on these individuals, whether or not they were actually named in the proceeding.

---

[50] *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008) (noting presumption that "Legislature included each word in the statute for a purpose" and that "the words not included were purposefully omitted").

[51] *See Narmah v. Waller Indep. Sch. Dist.*, 257 S.W.3d 267, 275 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

[52] *See id*.

12

Although parties to whom the required publication notice is given may answer or intervene, they do not have to do so for the above effects to occur. Finally, [chapter 1205] allows "[a]ny party to an action under this chapter" to appeal the judgment—and, as we have explained above, "a party" includes a statutory class member to whom the required notice was given, even if that person was not individually named, did not answer, or did not intervene. [The appellant] was thus eligible to have taken an accelerated appeal from the final judgment under the authority of section 1205.068.[53]

Second, we cannot conclude that this construction of "party" under section 1205.068 effects the sort of "absurd result" that would belie the legislative intent otherwise reflected in the statute's unambiguous words. As Alejos suggests, the "absurd results" concept is not an open invitation for courts to second-guess legislative policy decisions in the guise of "construing" statutes, but a check against blindly narrow and out-of-context readings of statutory language that the Legislature could not possibly have meant.[54] For example, we recently applied the concept in concluding that the Legislature could not possibly have intended a prohibition against expenditures of public funds for "political purposes" to mean "political" in the sense of relating to government or the conduct of government, as that would amount to a mandate that state agencies cease all activity.[55] That is not the sort of situation we have here. Instead, the Legislature's inclusion of "interested party" class members in the "parties" who may appeal under section 1205.068, regardless of whether they become "named parties" during the trial-level proceedings, is consistent with a

[53] *Id*. (internal citations omitted).

[54] *See T.C.R. v. Bell Cnty. Dist. Attorney's Office*, 305 S.W.3d 661, 671–72 (Tex. App.—Austin 2009, no pet.) (declining to "second-guess" Legislature's policy judgment under "absurd-results" principle); *see also* J. Woodfin Jones, *The Absurd-Results Principle of Statutory Construction in Texas*, 15 Rev. Litig. 81 (1996) (discussing history of this principle).

[55] *See Texans Uniting for Freedom & Reform v. Saenz*, 319 S.W.3d 914, 923–29 (Tex. App.—Austin 2010, pet. denied).

determined policy choice between two alternative sets of litigation incentives for those class members who are inclined to take an active role in opposing the issuer's petition:[56] (1) allowing those class members to remain "on the sidelines" so long as they perceive their interests are adequately represented by parties participating personally in the proceedings (i.e., the Attorney General or a named party), with the option of entering the fray, including bringing an appeal, if and when those parties cease to do so (which is the consequence of our construction); versus (2) requiring each class member inclined to active participation to become a named party or risk foregoing any right to seek appellate relief in the event the Attorney General or some other named party eventually elects not to pursue such relief (which is the consequence of the District's construction). The Legislature could well have concluded that the former approach, which encourages reliance on virtual representation instead of incentivizing prophylactic personal participation, is a preferable means of advancing chapter 1205's overarching goals of "quickly and efficiently" resolving the litigation and related legal uncertainties. It is not an "absurd result."

Finally, construing chapter 1205 as a whole, we find confirmation that the Legislature opted to address the potential drawbacks of creating large classes of potential litigants through a means other than limiting the range of "parties" who can file answers, intervene, or appeal—the bond requirement imposed in subchapter E.[57] And, as we explain below, we conclude that Alejos is subject to this requirement to the same extent as if he had become a "named party" prior to final judgment.

---

[56] Which, we would observe, would rarely include, e.g., the entire population of San Antonio and its visitors who spend money there. However, we acknowledge that a particularly controversial bond issue in a locality could potentially attract a considerable crowd of active opponents.

[57] *See* Tex. Gov't Code §§ 1205.101–.105 (provisions of subchapter E).

14

In a final rejoinder, the District suggests that our construction of section 1205.068 would confer jurisdiction on this Court beyond the constitutional limitations on judicial power reflected in standing doctrine. Standing under the Texas Constitution requires "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court,"[58] and among other components of these requirements is an injury that is particularized, not merely common to the "general public."[59] In these ways and others, standing requirements serve to maintain the proper separation of governmental powers both by preventing courts from issuing advisory opinions and, with regard to challenges to governmental action in particular, by preventing judicial incursions into abstract or generalized public policy disputes that are properly resolved in the other branches.[60] They also "reflect in many ways the rule that neither citizens nor taxpayers can appear in court simply to insist that the government and its officials adhere to the requirements of law . . . because '[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review.'"[61]

---

[58] *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012) (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304, 307 (Tex. 2008); *Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 774 (Tex. 2005); *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001)).

[59] *See Heckman*, 369 S.W.3d at 154–55.

[60] *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 174 (Tex. App.—Austin 2013, no pet.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 576–78 (1992); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

[61] *Id.* at 174–75 (quoting *Andrade v. Venable*, 372 S.W.3d 134, 136–37 (Tex. 2012) (quoting *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011)); *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

The District questions whether Alejos would possess any particularized injury from the district court's judgment when he has not participated personally in the proceedings below or preserved any error unique to himself. Without such participation, the District suggests, Alejos possesses merely the same interest shared in common with over one million of his fellow San Antonio residents (and still more fellow payers of the sales taxes that fund the District). Nor, the District suggests, could Alejos come within the exception to the particularized injury requirement permitting "taxpayers" to sue to enjoin allegedly illegal governmental expenditures—i.e., "taxpayer standing"[62]—because the expenditures at issue here are funded by the sales taxes the District receives. As the District observes, the Texas Supreme Court has held that one's status as a payer of sales taxes is an interest insufficient to give rise to taxpayer standing.[63] At bottom, the District asks us to classify Alejos as merely an outspoken political opponent of VIA's streetcar initiative and the District's bond issue,[64] but not one possessing an interest sufficient to invoke the jurisdiction of the judiciary to resolve these disputes. Alejos's complaints instead belong in the other governmental branches, the District suggests.

Alejos responds that he possesses a justiciable interest in his appeal because chapter 1205 binds him (like other "interested party" class members) to the district court's

---

[62] *See Williams v. Lara*, 52 S.W.3d 171, 179 (Tex. 2001) ("Taxpayers in Texas have standing to enjoin the illegal expenditure of public funds, and need not demonstrate a particularized injury.") (citing *Bland*, 34 S.W.3d at 556).

[63] *Id.* at 179–80 (holding that "paying sales tax does not confer taxpayer standing").

[64] In this regard, the District emphasizes that Alejos, a San Antonio civic leader, has been quite prominent in political and public-relations efforts to oppose the District's bond issue and VIA's streetcar initiative, further insinuating that his attempted appeal is merely a stratagem in that broader policy conflict.

judgment.[65]  But this assertion merely begs the question as to whether Alejos possesses any constitutionally cognizable interest in the subject matter of the judgment, and it is the existence of such an interest that the District disputes.  But if the District is correct that Alejos for these reasons lacks standing to prosecute his appeal, the same would also have been true of his participation in the trial court proceedings, and it would also imply more broadly that chapter 1205's range of "parties" who can participate personally in bond-validation litigation, whether at the trial or appellate levels, will frequently encompass persons lacking constitutional standing to litigate the dispute in court, potentially conferring jurisdiction on the courts beyond our constitutional limitations.[66]  But we do not understand the District to be making this sort of broader challenge to chapter 1205 here; to the contrary, it argues that Alejos, despite the District's view that he lacks standing, should nonetheless have answered or intervened in the trial-level proceedings.  In short, the substance of the District's arguments regarding Alejos's standing ultimately go not to the proper construction of "parties" who may personally participate in litigation under chapter 1205, but to whether constitutional standing requirements independently bar him from bringing an appeal that section 1205.068 otherwise authorizes.

We need not decide this question of Alejos's constitutional standing, let alone any broader implications of the District's argument, because the Legislature has imposed a separate

---

[65]  *See* Tex. Gov't Code § 1205.151(b)(4).

[66]  *See Finance Comm'n v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013) (noting that Legislature cannot enlarge courts' constitutional jurisdiction by statute) (citing *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 462 (Tex. 2011)).  Nor would the class-action features of chapter 1205 necessarily resolve such a problem.  *See Heckman*, 369 S.W.3d at 150–51.

statutory limitation on our jurisdiction that we should consider first[67]—chapter 1205's bond requirement.

## THE BOND REQUIREMENT

Chapter 1205's bond provisions—subchapter E—state that an issuer may file, "[b]efore the entry of final judgment," a motion seeking an order "that any opposing party or intervenor, other than the attorney general," be dismissed unless that person posts a bond payable to the issuer in the event the issuer ultimately prevails to cover "any damage or cost that may occur because of the delay caused by the continued participation of the opposing party or intervenor."[68] Upon receipt of such a motion, the court shall issue an order, which shall be personally served on the "opposing party or intervenor" with a copy of the motion, requiring the "opposing party or intervenor" to appear at a time specified by the court (which must be at least five and not more than ten days hence) and "show cause why the motion should not be granted."[69] The court "shall grant" the motion "unless, at the hearing on the motion, the opposing party or intervenor establishes that the person is entitled to a temporary injunction against the issuance of the public securities."[70] If the court grants the motion, it must also set the bond "in an amount determined by the court to be sufficient to cover any damage or cost, including an anticipated increase in interest rates or in a

---

[67] *See VanDevender v. Woods*, 222 S.W.3d 430, 432 (Tex. 2007) ("Judicial restraint cautions that when a case may be decided on a non-constitutional ground, we should rest our decision on that ground and not wade into ancillary constitutional questions.").

[68] Tex. Gov't Code § 1205.101(a).

[69] *Id*. § 1205.101(b).

[70] *Id*. § 1205.102.

18

construction or financing cost, that may occur because of the delay caused by the continued participation of the opposing party or intervenor . . . if the issuer finally prevails and obtains substantially the judgment requested in its petition."[71] Thereafter, "[t]he court shall dismiss an opposing party or intervenor who does not file a required bond before the 11th day after the date of the entry of the order setting the amount of the bond,"[72] and "[n]o court has further jurisdiction over any action to the extent that action involves any issue that was or could have been raised in the action under this chapter," subject to a limitation not applicable here.[73]

Although the district court issued a February 25, 2014 "Order Setting Bond" in purported compliance with these requirements, and it is undisputed that Alejos did not comply with the order within ten days thereafter—and still has not complied—the district court did not proceed to dismiss Alejos, evidently in the view that this would interfere with our jurisdiction over Alejos's earlier Judgment Appeal. But Alejos's noncompliance with the bond order potentially implicates our jurisdiction nonetheless, inasmuch as the Legislature has also provided in subchapter E that (subject to an exception not applicable here) "no court has further jurisdiction over any action to the extent it involves an issue that was or could have been raised in the action under this chapter" if the "opposing party or intervenor" fails to comply within ten days after the date of the court's order setting bond.[74] Further, while Alejos has appealed the district court's bond order, the

---

[71]  *Id*. § 1205.103(b).

[72]  *Id*. § 1205.104(a).

[73]  *Id*. § 1205.104(c).

[74]  *Id*. § 1205.105(c); *see Hotze*, 339 S.W.3d at 820 (in reliance on section 1205.105(c), dismissing appeals under chapter 1205 for failure to post bond within ten days of trial court's order setting bond).

19

Legislature—consistent with its overarching intent to expedite proceedings under chapter 1205—has provided that such appeals do not change the operation and effect of the original ten-day deadline for posting bond unless (1) we render judgment modifying the district court's order setting bond, in which case the ten-day deadline for Alejos to post bond would run from the date of the modified order;[75] or (2) we reverse the order setting bond outright.[76] Consequently, unless we grant Alejos one of these forms of relief in regard to the Bond Appeal, we must immediately dismiss his Judgment Appeal for want of jurisdiction.[77]

In his Bond Appeal, Alejos complains of two sets of asserted procedural irregularities underlying the Order Setting Bond. The first boils down to a contention that Alejos is not subject to the bond requirement because he did not participate personally in the litigation until after final judgment. In *Hotze v. City of Houston*, we rejected the notion that a bond ordered under chapter 1205 is intended to protect the issuer only through trial, holding that the "security-bond provisions apply to both trial and appellate proceedings."[78] We reasoned that while issuers are required to file a motion to file a security bond prior to entry of final judgment, "nothing in [chapter 1205] suggests that the security bond is applicable only before trial," and that the chapter implied the contrary in tying the bond amount to "whether the issuer '*finally* prevails,' which

---

[75] *See Glaser*, 632 S.W.2d at 150–51 ("We construe 'the appropriate order' to mean the trial court's bond order unless it is modified or reversed on appeal. If the bond order is modified . . . then contestants have 10 days from that order as the 'appropriate order' to post the required bond or suffer dismissal.").

[76] *See id*.

[77] *See Hotze*, 339 S.W.3d at 820.

[78] *Id*. at 816.

suggests that the bond is intended to be effective through appeal."[79]  We further observed that if a required bond is not timely filed, chapter 1205 mandated that "'no court' has further jurisdiction over any issue that could have been raised in the suit,"a phrase that "would be superfluous at best and meaningless at worst" if the bond requirement did not apply to any post-trial matters.[80]  Alejos urges that *Hotze* is distinguishable because the litigants there had become "named parties" prior to final judgment and before perfecting their appeal,[81] whereas he did not participate personally in the litigation until filing his notice of appeal.  He further insists that chapter 1205 does not contemplate that the bond requirements will be applied to persons who were not "named parties" in the trial court.  We disagree.

As previously explained, subchapter E's bond requirements play an essential role in ensuring that chapter 1205 as a whole achieves its intended purposes.  As we concluded in *Hotze*, the Legislature intended these requirements to operate at both the trial and appellate levels.  While Alejos is correct in observing that *Hotze* itself involved litigants who had become "named parties" in the trial-level proceedings, our logic would extend equally to any litigants who, like Alejos, choose to enter the fray for the first time on appeal.  But even more significantly, there is additional textual support for this conclusion in subchapter E that we did not have occasion to address in *Hotze*.

Contrary to what Alejos suggests, the Legislature in subchapter E made the bond requirements applicable not to "named parties"—i.e., members of the class of "interested parties"

---

[79] *Id*. (quoting, with added emphasis, Tex. Gov't Code § 1205.103(b)).

[80] *Id*. (quoting Tex. Gov't Code § 1205.105(c)).

[81] *See id*. at 813.

21

who file an answer prior to the trial date or intervene before the final judgment[82]—but used a different phrase: "*opposing* party or intervenor." We presume that the Legislature intended the same exactitude in using "opposing party" in subchapter E as it did in its other uses of "party" in chapter 1205, so its use of "*opposing*" party here, as opposed to "*named*" party, is potentially significant.[83] As we have previously observed, subchapter E's requirement that an "opposing party" or its attorney be served personally with notice of the bond hearing[84] would imply that an "opposing party" must be an "interested party" class member who has begun to participate personally in the litigation. As for how a class member must participate in order to become an "opposing party," the most obvious answer would be any procedural means through which the member could litigate against the issuer's petition under chapter 1205. We have concluded there are three—filing an answer before the trial date, intervening prior to final judgment, *or* filing an appeal. While the first two methods would make the member a "named party" under chapter 1205, the Legislature made all "opposing parties" subject to the bond requirement, and this would include appellants, in our view. In short, Alejos is subject to subchapter E's bond requirement to the same extent as if he had become a named party.[85]

---

[82] *See* Tex. Gov't Code § 1205.062.

[83] *See In re M.N.*, 262 S.W.3d at 802 (noting presumption that "Legislature included each word in the statute for a purpose").

[84] *See* Tex. Gov't Code § 1205.101(b).

[85] Alejos also suggests that the District failed to invoke the bond requirement by filing its motion "[b]efore final judgment." *See id*. § 1205.101(a). To the contrary, as previously noted, the District filed a motion at the inception of its case to set bond against any "opposing party or intervenor." In reply, Alejos insists that this motion did not survive the district court's final judgment and that the District must rely solely upon the post-judgment motion regarding bond

Alejos's second set of asserted procedural irregularities are that the district court did not afford him the opportunity for notice and a hearing that subchapter E requires. Alejos is correct—in fact, in its Order Setting Bond, the district court acknowledges that "Mr. Alejos and his counsel were not permitted to argue, make objection, or present evidence regarding the motion" seeking to set bond against him.[86] As the Order also reflects, this was a product of understandable confusion regarding Alejos's "party" status. Nonetheless, having concluded that Alejos is a "party" entitled to appeal and who is subject to subchapter E's bond requirements to the same extent as "named parties," we are compelled to agree with Alejos that he was entitled to the notice and hearing procedures that subchapter E requires before setting a bond. As such, the Order Setting Bond must be reversed. To this extent, we sustain his first issue.

The District does not seriously dispute that the Order Setting Bond was, in these respects, procedurally flawed, but urges us to proceed to the merits of Alejos's Judgment Appeal nonetheless and affirm the final judgment. We conclude we should not do so, as the Legislature has conditioned our jurisdiction to reach those merits on Alejos's compliance with subchapter E's bond requirement,[87] and that issue has yet to be resolved. Unless and until our jurisdiction over the Judgment Appeal is firmly established, we should not "jump ahead" to the merits of that appeal—especially where the merits involve quite significant and complex questions regarding the

---

that responded to Alejos's notice of appeal. We conclude that the District's original motion was sufficient to preserve its right to bond under subchapter E.

[86] *Cf. id*. §§ 1205.101(b) (court must order opposing party to appear and show cause why motion should not be granted), .102 (standard for granting bond motion), .103 (determination of bond amount).

[87] *Id*. § 1205.105(c) (providing that "no court has further jurisdiction over any action" if bond is not timely posted).

District's legal authority relative to its taxpayers—lest we exceed our proper role within the constitutional separation of powers.

## CONCLUSION

In the Bond Appeal, we reverse the Order Setting Bond and remand that issue to the district court for a new bond hearing. Consistent with the statutory goals of chapter 1205, we request that the parties and the district court conduct a hearing as soon as possible in compliance with chapter 1205 and immediately forward any further order of the district court to this Court. In the meantime, the Judgment Appeal and the District's motion to dismiss will remain pending.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

03-14-00109-CV        Remains pending

03-14-00139-CV        Reversed and Remanded

Filed:   April 2, 2014