**Affirmed and Opinion filed April 3, 2025.**



In The

# Fifteenth Court of Appeals

---

### NO. 15-24-00009-CV

---

**TERRY BURNS, M.D., AND STEPHEN M. RAPKIN, Appellants**

**V.**

**THE CITY OF SAN ANTONIO, TEXAS, ACTING BY AND THROUGH THE CITY PUBLIC SERVICE BOARD OF SAN ANTONIO, TEXAS, AND KEN PAXTON, ATTORNEY GENERAL OF TEXAS, Appellees**

---

**On Appeal from the 126th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-001544**

---

### OPINION

Appellants Terry Burns, M.D. and Stephen M. Rapkin appeal the trial court's summary judgment denying their petition for bill of review in which they challenged a judgment issued under the Expedited Declaratory Judgment Act (EDJA) as (1) void for lack of subject matter jurisdiction; and (2) void for a denial of notice amounting to a constitutional due process violation. *See* Tex. Gov't Code Ch. 1205. The City of San Antonio, acting by and through the City Public Service Board of

San Antonio, filed a motion for summary judgment seeking dismissal of the bill of review, arguing that the EDJA expressly barred the bill of review and, alternatively, that Appellants' claims were legally meritless.[1] Appellants filed a competing motion for summary judgment in which they alleged (1) the trial court lacked subject matter jurisdiction to enjoin movants or the registered voters of San Antonio from seeking to enact the charter amendment in question or any other charter amendment; (2) the trial court lacked jurisdiction to declare the proposed amendment invalid; and (3) the declaratory judgment was void because it was beyond the scope of the EDJA. The trial court granted the City's motion, denied Appellants' motion, and dismissed Appellants' bill of review.

In Appellants' first issue, they challenge the trial court's denial of their motion for summary judgment. In Appellants' second issue, listing several sub-issues, they challenge the grant of the City's summary judgment motion. We affirm the trial court's judgment.

## BACKGROUND

In 1942, the City acquired, and has since owned and improved, its electric and gas utility systems pursuant to Chapters 1201 and 1372 of the Government Code. *See* Tex. Gov't Code § 1201.001–.067 (Public Security Procedures Act); *see also id.* § 1372.001–.103 (specific authority for state or local government to issue securities). From time to time, the City has adopted ordinances and issued public securities to finance the City's electric and gas utility systems.

The City confirms and extends investment of the management and control of the electric and gas utility systems in the City Public Service Board of San Antonio

---

[1] Appellee Attorney General Ken Paxton did not file a motion for summary judgment in the trial court and takes no position on the issues raised on appeal.

2

(the "Board," which now conducts business under the name CPS Energy). The Board derives its authority to manage these utilities from the city ordinances known as the "Governance Provisions." The Governance Provisions (1) established that Board membership consisted of five Trustees, one of whom was the City's Mayor; (2) specified that the Board has "absolute and complete authority and power" to control, manage, and operate the City's electric and gas utility systems; (3) provided that Board Trustees' terms of office and term limits were inconsistent with two-year terms and term limits for City Councilmembers; and (4) covenanted to maintain the governance and management structure until the public securities issued are no longer outstanding.

In 2020, the City authorized the issuance, sale, and delivery of 26 public securities ("Public Securities") authorized by 20 bond ordinances ("Ordinances") for the purpose of building, improving, extending, enlarging, and repairing the City's gas and electric utility systems or refinancing previously issued revenue obligations. As an example, the 2020 Bond Ordinance provided:

> The provisions of this Ordinance shall constitute a contract between the City and the holder or holders from time to time of the New Series 2020 Bonds or any Additional Parity Bonds, and, after the issuance of any of said bonds, no change, variation, or alteration of any kind in the provisions of this Ordinance may be made, unless as herein otherwise provided, until all of said bonds issued hereunder shall have been paid as to both principal and interest.

The Public Securities issued and, at the time the EDJA petition was filed, were outstanding or authorized in the total principal amount of $6,189,680,000. The City obtained the Attorney General's approval of the Public Securities and registered them with the Comptroller of Public Accounts for the State of Texas. The Public Securities and their authorizing Ordinances thus became "incontestable" and "valid, binding, and enforceable according to [their] terms." Tex. Gov't Code

3

§ 1371.059(a).

## I. The City Files the EDJA Action in the Trial Court.

In October 2020 Appellants began to collect signatures on a citizens' initiative petition (the "Initiative Petition"), which, if passed, would change the Board from a five-member board to an eleven-member board consisting of the City Council and the Mayor.

On November 12, 2020, the City filed an action in Travis County District Court seeking to "adjudicate the legality, validity and enforceability" of the Public Securities and their corresponding Ordinances. *See* Tex. Gov't Code §§ 1205.001–.152.

The City asserted that the Initiative Petition and its contemplated charter amendments ("Charter Amendments") would "unconstitutionally and impermissibly amend and impair the City's contractual obligations set forth in each of the Ordinances, including without limitation, the terms of the Governance Provisions, Term Limit Provisions and Amendment Provisions." The City alleged that the Charter Amendments sought by the Initiative Petition posed an imminent threat to the validity of the Public Securities in the form of contractual impairment because the modifications would eliminate the Board's autonomy from City politics. The City further alleged the Initiative Petition directly conflicted with the Ordinances in that the Ordinances could only be amended using exclusive methods promulgated through the Ordinances and as relied upon by holders of the Public Securities.

Citing actual harm rather than "likely" harm, the City alleged that "at least one of the national credit rating agencies" had revised its outlook for the City from "stable" to "negative," based in part on the existence and pendency of the Initiative Petition. The City depended "upon favorable credit ratings and outlooks to borrow

4

money at low interest rates where even small incremental changes can have tremendous financial impact." When the City filed its original petition, the Initiative Petition had not attained the requisite 20,000 signatures to place the proposed Charter Amendments on the ballot.

Pursuant to the EDJA, the City served the Attorney General with a copy of its petition and published notice to "interested parties" in Travis County through the *Austin American Statesman* and in Bexar County (where the City has its principal office) through the *San Antonio Express News*. *See* Tex. Gov't Code §§ 1205.041 (including among list of "interested parties" all persons who reside in territory of securities issuer), –.042 ("Service of Notice on Attorney General; Waiver of Service"), –.043 (providing details of timing and venue of publication notice). The City also published notice in five local newspapers in smaller cities where the City's electric and gas utility systems are located.[2] No person filed an answer or intervened. *See id.* § 1205.062.[3]

After a bench trial, the trial court granted the City's requested declaratory relief, declaring the Public Securities and Ordinances "legal, valid, and incontestable." Specifically, on December 7, 2020, the trial court rendered the following declarations:

1. The City is an issuer of public securities as defined by Chapter 1205 and is authorized to bring this action.

2. The City has complied with the statutory requirements of Chapter 1205, including timely and proper notice of trial.

---

[2] The local newspapers included the *Bandera Bulletin*, the *Boerne Star*, the *Wilson County News*, the *Pleasanton Express*, and the *Hondo Anvil Herald*.

[3] "The effect of notice given under Sections 1205.041 and 1205.043 is that (1) each person described by Section 1205.041(a) is a party to the action; and (2) the court has jurisdiction over each person to the same extent as if that person were individually named and personally served in the action." Tex. Gov't Code § 1205.044.

3. The City owns its electric and gas utility systems (together, the "Systems").

4. For the purpose of building, improving, extending, enlarging, and repairing the Systems or refinancing previously issued revenue obligations, the City has issued, sold, and delivered the following public securities, as defined by Chapter 1205, that remain outstanding (the "Public Securities"): [list of Public Securities]

5. For each Public Security, the City [] has made a valid "public securities authorization" as defined by Chapter 1205 (collectively, the "Ordinances"), which are as follows: [list of Ordinances]

6. The Court has subject matter jurisdiction over this action, and venue in Travis County is proper.

7. The Court has *in rem* jurisdiction over the Public Securities, as well as personal jurisdiction over the City, acting by and through the Board; the Attorney General; all residents, property owners, and taxpayers of the City; all ratepayers and customers of CPS Energy, including residential, commercial, retail, and wholesale customers; and any other persons who have or claim a right, title, or interest in any property or money to be affected by the Ordinances or the issuance of the Public Securities ( collectively, the "Interested Parties").

Pursuant to the EDJA's terms, the trial court's judgment is "binding and conclusive" against any party to the action, whether named and served with notice or served by publication. Tex. Gov't Code § 1205.151(b). The judgment also granted injunctive relief. *See id*. § 1205.151(c) (providing that judgment "is a permanent injunction against the filing by any person of any proceeding contesting the validity of . . . the public securities, a public security authorization," and "any adjudicated matter and any matter that could have been raised in the action."). No party appealed the judgment. *See id*. § 1205.068 (providing that "any party" to an EDJA action may appeal judgment; that "judgment from which an appeal is not taken is final" and that appeals are accelerated and take "priority over any other matter, other than writs of

6

habeas corpus").

## II. Appellants File a Motion for New Trial and Appeal to the Third Court of Appeals.

On February 23, 2021, Appellants filed a motion for new trial in the EDJA action, identifying themselves as registered voters in the City and as some of the organizers of the Initiative Petition. Appellants alleged that the City filed its "secret" EDJA suit when petitioners had gathered 14,000 signatures and that the suit's "actual sole purpose" was to permanently enjoin the organizers and "all residents" of the City "from ever attempting to change the governance or policies of the city-owned utility by home rule charter amendment, under the pretense that such changes would breach provisions of the bonds." Appellants alleged that the City had been well aware of the organizers' identities but nonetheless did not provide them "actual notice" of the suit; "deliberately kept interested citizens from participating" in the suit; and "did not announce [the suit] publicly until January 7, 2021, in an attempt to foreclose appeal under § 1205 accelerated appeal procedures."

In their motion for new trial, Appellants asserted that the judgment was void because the trial court lacked subject matter jurisdiction. Appellants also sought a new trial on the ground that their due process rights were violated when the City provided them publication-notice only, citing a concurrence in *City of Magnolia v. Magnolia Bible Church*. *See* 629 S.W.3d 471, 476–78 (Tex. App.—Austin 2020, no pet.) (Rose, C.J., concurring). The trial court denied the motion for new trial, and Appellants filed a notice of appeal on May 5, 2021.

On appeal, the City alleged that the Third Court of Appeals lacked jurisdiction over the appeal because Appellants' notice of appeal was untimely. *Burns v. City of San Antonio ex rel. City Pub. Serv. Bd. of San Antonio*, No. 03-21-00214-CV, 2021 WL 5457049, at *2 (Tex. App.—Austin Nov. 18, 2021, pet. denied) (mem. op.).

7

Assuming without deciding that Appellants were "defendant[s]" under Rule 329 of the Texas Rules of Civil Procedure and were entitled to file a Rule 329 motion for new trial in the EDJA action, the Third Court addressed whether Appellants' notice of appeal was timely filed. *Id.* The EDJA provides that appeals under the act are to be "governed by the rules of the supreme court for accelerated appeals[.]" Tex. Gov't Code § 1205.068(e). In an accelerated appeal, a notice of appeal must be filed within 20 days after the judgment is signed or, if a proper extension request is made and granted, within 35 days. *See* Tex. R. App. P. 26.1(b); *see also* Tex. R. App. P. 26.3 (permitting extension of time to file notice of appeal if a party files a notice of appeal and a motion requesting an extension of time within 15 days after the deadline for filing the notice of appeal). Unlike in a non-accelerated appeal, a timely-filed motion for new trial does not extend the deadline to file the notice of appeal in an accelerated appeal. Tex. R. App. P. 28.1(b); *see In re K.A.F.*, 160 S.W.3d 923, 927 (Tex. 2005). Concluding that Appellants' notice of appeal was due March 15, 2021, or with an extension, March 30, 2021, the Third Court held that Appellants' notice of appeal filed May 5, 2021 was untimely, depriving the Third Court of Appeals of jurisdiction. *Burns*, 2021 WL 5457049, at *2.

In dismissing the appeal for lack of jurisdiction, the Third Court rejected Appellants' argument that the appeal should be considered under the standard timelines rather than the accelerated timelines because their Rule 329 motion was the substantive equivalent of an equitable bill of review. *Id.* at *3. Appellants also contended that the Third Court of Appeals had jurisdiction over their appeal because the substance of their motion constituted a collateral attack on the EDJA judgment. *Id.* at *4. While acknowledging that the substance of Appellants' motion could arguably support a conclusion they were attempting to lodge a collateral attack, the Third Court rejected Appellants' attempt to come within its jurisdiction because

Appellants failed to follow the proper procedure for a collateral attack. *Id.* (citing *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)) Specifically, Appellants filed their motion for new trial in the same proceeding as the EDJA action rather than in a separate suit as required to collaterally attack a judgment. *Burns*, 2021 WL 5457049, at *3. Having rejected each of Appellants' contentions, the Third Court of Appeals dismissed Appellants' appeal for lack of jurisdiction. *Id.* at *4–5. Appellants' requests for rehearing and rehearing en banc were denied, as was their petition for review to the Texas Supreme Court.

## III. The Trial Court Denies Appellants' Petition for Bill of Review Filed After the Third Court of Appeals Dismissed the Appeal.

On March 21, 2023, Appellants filed a petition for bill of review in a new case number seeking to set aside the EDJA court's judgment as void for lack of subject matter jurisdiction. Appellants asserted the EDJA court lacked subject matter jurisdiction because (1) the judgment impermissibly interfered with an election; and (2) the judgment was outside the scope of the EDJA because it prevented a city-owned energy utility from being challenged by "citizen legislators." Appellants subsequently amended their bill of review to add a claim that they were prevented from presenting a meritorious defense because the City failed to give them proper notice of the EDJA petition.

The City filed a motion for summary judgment, asserting it was entitled to judgment as a matter of law because (1) a bill of review is not available in an EDJA action; (2) the trial court had subject matter jurisdiction; and (3) Appellants were not prevented from asserting meritorious defenses. Appellants filed a cross-motion for summary judgment in which they asserted entitlement to judgment as a matter of law because the trial court's declaratory judgment was void for lack of subject matter jurisdiction. The trial court, without stating its reasons, granted the City's motion

9

and denied Appellants' motion. This appeal followed.

## ANALYSIS

In two issues, Appellants argue that the trial court erred in granting the City's summary judgment and denying their motion for summary judgment. Appellants also challenge the trial court's subject matter jurisdiction over the City's EDJA petition. The City responds that a petition for bill of review is not permitted to challenge a declaratory judgment under the EDJA, that a bill of review is not available to Appellants because they did not avail themselves of all adequate legal remedies and cannot establish a meritorious defense, and that Appellants failed to establish that the judgment is void.

## I.      Standard of Review

This case presents a cornucopia of issues—the review of cross motions for summary judgments, the Expedited Declaratory Judgment Act's interpretation, and the availability of different mechanisms for challenging judgments after the time for an appeal has expired.

We review the trial court's grant of summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). To prevail on a traditional motion for summary judgment, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. Tex. R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When opposing parties file cross motions for summary judgment, each party must establish that it is entitled to judgment as a matter of law. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). When the trial court grants one motion and denies the other, as the trial court did here, we review all questions presented and render the judgment the trial court should have rendered. *Id*. Summary judgment will

10

be granted against a bill of review petitioner if the summary judgment movant can establish the absence of any necessary element of the bill of review. *See In re Baby Girl S.*, 407 S.W.3d 904, 909 (Tex. App.—Dallas 2013, pet. denied) (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 311–12 (Tex. 1984)). When the order granting summary judgment does not specify the grounds relied upon, we affirm the judgment if any ground that the motion advances is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Both parties acknowledge that this case requires us to interpret the EDJA. We review questions of statutory construction de novo, seeking to ascertain and effectuate the Legislature's intent as expressed by the statute's language, considering the context and framework of the statute as a whole. *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 451 (Tex. 2020) (interpreting the EDJA); *see Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019); *see also City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 580 (Tex. 2018).

This case also presents questions of jurisdiction. Whether a trial court had jurisdiction is a question of law that we review de novo. *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (subject matter jurisdiction); *see PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012).

Texas courts distinguish between void judgments and judgments that are merely voidable with respect to the mechanisms available to challenge them. It is "well settled that a litigant may attack a void judgment directly or collaterally." *PNS Stores*, 379 S.W.3d at 271; *see also Zarate v. Sun Operating Ltd., Inc.*, 40 S.W.3d 617, 620 (Tex. App.—San Antonio 2001, pet. denied); *Sanchez v. Roberts Truck Ctr. of Tex.*, LLC, No. 11-19-00392-CV, 2021 WL 4998763, at *2 (Tex. App.— Eastland Oct. 28, 2021, no pet.) (mem. op.). A judgment is void, as opposed to voidable, if the court lacked jurisdiction (1) over a party or the property; (2) over the

subject matter; (3) to enter a particular judgment; or (4) to act as a court. *In re D.S.*, 602 S.W.3d 504, 512 (Tex. 2020); *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985) (per curiam).

"There is no set procedure for a collateral attack, nor is there a statute of limitations." *Sanchez*, 2021 WL 4998763 at *2; *see In re A.G.G.*, 267 S.W.3d 165, 169 (Tex. App.— San Antonio 2008, pet. denied); ("A party making a collateral attack on a judgment does not need to meet the requirements of a bill of review."); Adele Hedges & Kim Askew, 1 TEX. PRAC. GUIDE: CIVIL PRETRIAL § 9:149 (Nov. 2024) (explaining that there is "no set procedure for a collateral attack."). A collateral attack attempts to "avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes." *PNS Stores,* 379 S.W.3d at 272 (citing *Prostok*, 165 S.W.3d at 346). A judgment may also be "challenged through a collateral attack when a failure to establish personal jurisdiction violates due process." *PNS Stores,,* 379 S.W.3d at 273 (relying on *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 81, 108 S. Ct. 896, 897, 99 L. Ed. 2d 75 (1988)).

In a collateral attack, the challenged order is presumed valid, and the party challenging it has the burden to show that it is void. *See Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994) (presumption); *Armentor v. Kern*, 178 S.W.3d 147, 149 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (burden). The presumption of validity is dispelled when the record establishes a jurisdictional defect. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) "The record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it either (1) establishes that the trial court lacked subject matter jurisdiction over the suit; or (2) exposes such personal jurisdictional deficiencies as to violate due process." *PNS Stores*, 379 S.W.3d at 273.

By contrast, judgments that are merely voidable must be attacked directly;

they are not eligible for collateral attack. *Id.* at 271; *Sanchez*, 2021 WL 4998763 at *2; *see Zarate*, 40 S.W.3d at 621. "A direct attack—such as an appeal, a motion for new trial, or a bill of review—attempts to correct, amend, modify or vacate a judgment and must be brought within a definite time period after the judgment's rendition." *PNS Stores*, 379 S.W.3d at 271. To set aside a judgment by bill of review, the petitioner ordinarily must plead and prove "(1) a meritorious defense to the underlying cause of action, (2) which the plaintiffs were prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on their own part." *Mabon Ltd. v. Afri-Carib Enterprises, Inc.*, 369 S.W.3d 809, 812 (Tex. 2012) (quoting *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004)). Not all elements are required in every case, however. *See, e.g., Peralta*, 485 U.S. at 84, 87, 108 S.Ct. at 900 (concluding that if a bill-of-review plaintiff proves the absence of service or the lack of notice of the dispositive trial setting, the plaintiff is relieved of proving the traditional bill-of-review elements).

## II.  The Consequences of the EDJA's Restrictions on Challenges to an EDJA Court's Judgment

Appellants argue that the trial court erred by granting summary judgment for the City and denying the City's motion to the extent that the Court relied on the City's argument that the EDJA expressly bars Appellants from challenging the EDJA court's judgment as void. The City responds that the plain text of Government Code Section 1205.151 expressly bars Appellants' challenges to the EDJA judgment. We hold that Chapter 1205 bars Appellants' challenges to the EDJA court's judgment as void for lack of subject matter jurisdiction, but it does not bar Appellants from challenging the EDJA court's judgment as void for lack of notice amounting to a Due Process Clause violation.

## A. Challenges to the EDJA Court's Subject Matter Jurisdiction

The City moved for summary judgment on the ground that EDJA Section 1205.151 bars the Appellants' challenges asserted in their bill of review. Appellants argue that, despite styling their pleading as a bill of review, Appellants are actually asserting a collateral attack on the judgment that is not barred by Section 1205.051 of the EDJA. According to Appellants, "[a] void judgment—one issued, as here, by a trial court lacking subject matter jurisdiction—can be challenged at any time either directly or collaterally." The City responds that Appellants' challenges are not true collateral attacks and are barred by the EDJA.

To resolve the question whether the Appellants' claims are barred, we need not determine whether Appellants are asserting a direct or collateral attack. "It is well settled that a litigant may attack a void judgment directly"—as through a bill of review—"or collaterally." *PNS Stores*, 379 S.W.3d at 271; *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009). Although the general rule is that a void judgment may be attacked at any time, this rule is not absolute. *See In re D.S.*, 602 S.W.3d at 516. The Texas Supreme Court has held that the "Legislature has the authority, within constitutional limits, to restrict post-judgment jurisdictional challenges via collateral attack," and courts "are not at liberty to judicially expand the statute's plain language" where the Legislature has imposed such restrictions. *Id.* (holding that Texas Family Code Section 161.211(c) plainly foreclosed a collateral attack on the judgment premised on an alleged lack of subject matter jurisdiction, and that the father's collateral attack on the judgment terminating parental rights was consequently barred). Accordingly, the question is whether, in crafting the EDJA, the Legislature restricted the trial court's power to act on the challenges asserted, whether brought as a direct attack or a collateral attack.

Appellants' challenges to the EDJA judgment come in two flavors—

challenges to the EDJA court's subject matter jurisdiction[4] and a challenge that the judgment is void due to lack of notice amounting to violation of due process under the United States Constitution. We first examine whether the EDJA bars challenges to a post-judgment attack on the EDJA court's subject matter jurisdiction, a question we review de novo. *See City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009). Our task is to "ascertain and give effect to the Legislature's intent, and 'the truest manifestation of what lawmakers intended is what they enacted.'" *In re D.S.*, 602 S.W.3d at 514 (quoting *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013)). We construe the statute as a whole while also considering the specific wording in context. *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013).

The EDJA is codified at Texas Government Code Chapter 1205. Section 1205.151 sets out the effect of a "final judgment of a district court in an action" under that chapter. *See* Tex. Gov't Code § 1205.151. The effect is profound—the judgment "is a permanent injunction against the filing by any person of any proceeding contesting the validity of (1) the public securities, a public security authorization, or an expenditure of money relating to the public securities described in the petition; (2) each provision made for the payment of the public securities or of any interest on the public securities; and (3) any adjudicated matter and any matter that could have been raised in the action." Tex. Gov't Code § 1205.151(c). Section 1205.068 authorizes an appeal that is "governed by the rules of the supreme court for accelerated appeals in civil cases," but nothing in Section 1205.151 purports to

---

[4] Appellants challenge the trial court's judgment as void for lack of subject matter jurisdiction, arguing (1) the judgment violated separation of powers because it enjoined an election; (2) the judgment violated the Texas Constitution's open-courts provision because the issue was not ripe; and (3) the judgment was outside the scope of the EDJA. Although we do not analyze the merits of these challenges, we note that the EDJA judgment does not, on its face, expressly enjoin any election.

authorize a bill of review proceeding if a party misses the window to challenge the judgment by appeal. Nor does Chapter 1205 say anything about allowing a collateral attack on the trial court's subject matter jurisdiction.

We assume that the Legislature chose its words with care, including each for a purpose and deliberately omitting others. *In re D.S.*, 602 S.W.3d at 514; *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 701 (Tex. 2015); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). Construing the statute as a whole, we hold that the Legislature has restricted the ability of litigants to contest the validity of "any adjudicated matter and any matter that could have been raised in the action." Tex. Gov't Code § 1205.151(c). Specifically, the Legislature authorizes litigants to challenge such matters in an appeal pursuant to Section 1205.168, but the Legislature has barred other mechanisms such as bills of review or collateral attacks.

Applying this interpretation, we conclude that Appellant's subject matter jurisdiction challenges to the EDJA court's judgment are barred. The EDJA court expressly adjudicated the question of whether it had subject matter jurisdiction, declaring that the court "has subject matter jurisdiction over this action." Subject matter jurisdiction challenges therefore constitute "adjudicated matters" or "any matter[s] that could have been raised" in the EDJA action. Tex. Gov't Code § 1205.151(c). A bill of review is a "proceeding," so it cannot be used to contest the validity of the court's subject matter jurisdiction. *Proceeding*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Any procedural means for seeking redress from a tribunal or agency."). So is a collateral attack. *Collateral Attack*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("An attack on a judgment in a proceeding other than a direct appeal."). Appellants correctly argue that they are free to choose one path or the other, *PNS Stores*, 379 S.W.3d at 271, but the EDJA stands as a "permanent

16

injunction" blocking both paths. *See* Tex. Gov't Code § 1205.151(c).

This interpretation accords with the Supreme Court's opinion in *City of Lubbock v. Isom*, 615 S.W.2d 171, 172 (Tex. 1981) (per curiam). In *City of Lubbock*, participants in a suit under the EDJA's predecessor statute failed to appeal the judgment on a timely basis. *Id*. at 172. They later sought relief by bill of review in a separate suit challenging the validity of the EDJA judgment approving the city's issuance of bonds. *Isom v. City of Lubbock*, 613 S.W.2d 505, 505–06 (Tex. App.— Eastland 1980), *rev'd*, 615 S.W.2d 171 (Tex. 1981). The City of Lubbock filed a plea to the jurisdiction, and the trial court dismissed the bill without an evidentiary hearing. *Id*. The Eastland Court of Appeals reversed, holding that the EDJA did not "take away the power of the court to act" on the bill of review. *Id.* at 508.

The City of Lubbock appealed to the Texas Supreme Court and won a reversal. Construing the EDJA's predecessor statute, the Texas Supreme Court held that the challenger was "expressly barred" from bringing the bill of review challenging the validity of the declaratory judgment. *City of Lubbock*, 615 S.W.2d at 172. The Court relied on language from the EDJA's predecessor statute, which stated in relevant part:

> In the event the decree of the District Court determines that the Issuer has authority to issue the Securities for the consideration and upon the terms set forth in the petition for declaratory judgment hereunder, . . . and no appeal is taken within the time above prescribed, . . . such decree shall, as to all matters adjudicated, be forever binding and conclusive, against the petitioner and all other parties to the cause, . . . *and shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the bonds*, ……

*Id.* at 172 (emphasis original) (quoting Act of May 30, 1959, 56th Leg., R.S., ch. 316, § 8, 1959 Tex. Gen Laws 692–93, *repealed by* Act of March 8, 1979, 66th Leg.,

17

R.S., ch. 400, § 14(a), 1979 Tex. Gen. Laws 881).[5] The current EDJA retains this "permanent injunction language," which deprives the trial court of power to act on Appellants' subject matter jurisdiction challenges.

Appellants urge us to distinguish *City of Lubbock* as merely precluding bill-of-review attacks on voidable judgments and not collateral attacks on void judgments. *City of Lubbock* does not say whether the bill of review in that case challenged a void or a voidable judgment. Regardless, the EDJA makes no distinction on that point—when Section 1205.068 accelerated appeals are exhausted or waived, the judgment stands as a "permanent injunction" against any proceeding challenging the validity of the judgment on any matter that was or could have been adjudicated. *See* Tex. Gov't Code § 1205.151(c).

The First Court of Appeals reached a similar conclusion in interpreting these same statutory provisions. The First Court of Appeals held that restricted appeals, which may be brought within six months after a judgment is signed, are unavailable in EDJA actions because they are inconsistent with the EDJA's purposes. *See Narmah v. Waller Indep. Sch. Dist.*, 257 S.W.3d 267, 274 (Tex. App.—Houston [1st Dist.] 2008, no pet.). In so holding, the court dismissed the appellant's restricted appeal, which included "issues contending that the judgment is void." *Id.* at 274. The court explained:

> We reach this conclusion because the Act's dual purposes of speedy determination and finality would be completely undermined by allowing a restricted appeal: a restricted appeal could be perfected any time within six months after the judgment's rendition, whereas every provision of the Act is geared to providing the fastest adjudication possible. In light of these purposes of the Act, it is significant that

---

[5] Former article 717m was codified as Government Code section 1205.151 in a "nonsubstantive revision of statutes relating to public securities." Act of May 24, 1999, 76th Leg., R.S., ch. 227, § 1, 1999 Tex. Gen. Laws 721, 742.

section 1205.068(e) mentions only accelerated appeals. *Id.* at 273.

The City argues that these same statutory objectives apply here and provide context for interpretation. We agree that "we do not read the Act's appellate provision in a vacuum, but instead with an eye toward the purpose of the Act: that a speedy and final determination be made." *Id.* "The Legislature enacted the EDJA to provide issuers of public securities—*e.g.*, the City of Houston—a method of quickly and efficiently adjudicating the validity of public securities and acts affecting those public securities." *Hotze v. City of Houston*, 339 S.W.3d 809, 814 (Tex. App.—Austin 2011, no pet.); *see also Rio Grande Valley Sugar Growers, Inc. v. Attorney Gen. of Tex.*, 670 S.W.2d 399, 401 (Tex. App.—Austin 1984, writ ref'd n.r.e.) ("The total thrust of the [EDJA] is to dispose of public securities validation litigation with dispatch.").

Significantly, the Act provides that "[t]o the extent of a conflict or inconsistency between this chapter [the Act] and another law, this chapter controls." Tex. Gov't Code § 1205.002(a). The EDJA is replete with provisions that are designed to make the proceeding move quickly, including a Legislative directive that the court must try the action "with the least possible delay." Tex. Gov't Code § 1205.065(a). The EDJA authorizes an appeal, but this appeal is an accelerated appeal in which the appellate court is to "render its final order or judgment with the least possible delay." Tex. Gov't Code § 1205.068(e). The First Court of Appeals recognized that the vast discrepancy between an accelerated appeal—which must be perfected within 20 days of the judgment—and the six-month window for a restricted appeal "would eviscerate the speedy and final determination that the Legislature intended for proceedings under the Act." *Narmah*, 257 S.W.3d at 272; Tex. R. App. P. 26.1(b) ("[I]n an accelerated appeal, the notice of appeal must be

filed within 20 days after the judgment or order is signed[.]"); Tex. R. App. P. 26.1(c) (authorizing parties meeting certain conditions to bring restricted appeal within six months after judgment is signed).

These concerns are exacerbated here, where a party may bring a bill of review up to four years after a judgment is signed. *See* Tex. Civ. Prac. & Rem. Code § 16.051. And a void judgment ordinarily "can be collaterally attacked at any time." *PNS Stores*, 379 S.W.3d at 272. Extending subject matter jurisdiction uncertainty for four years or indefinitely is irreconcilable with the Legislature's goal of achieving an expedited, final, and conclusive end to litigation affecting Texas public securities. Accordingly, we hold that Appellants' challenges to the EDJA court's subject matter jurisdiction are barred. The trial court did not err to the extent that it granted the City's summary judgment motion and dismissed the bill of review as to these challenges. Nor did it err by denying Appellants' summary judgment motion for the same reason. We overrule both of Appellants' appellate issues with respect to their subject matter jurisdiction challenges.

**B. Other Challenges**

This holding does not resolve the entire case, however. We do not read the statute to bar *every* potential attack on the judgment, especially a collateral attack asserting that a judgment is void for lack of notice that is tantamount to a denial of due process.

In *Peralta*, the United States Supreme Court held that "a judgment entered without notice or service is constitutionally infirm," and some form of attack must be available when defects in personal jurisdiction violate due process. 485 U.S. at 84, 108 S.Ct. at 899. Both the Texas Supreme Court and the U.S. Supreme Court have recognized that a judgment can be challenged as void through a collateral attack when a failure to establish personal jurisdiction violates a litigant's due process

20

rights. *See id.*; *PNS Stores*, 379 S.W.3d at 273.

The Texas Supreme Court unanimously interpreted a Family Code provision's "strict" six-month deadline to challenge a termination of parental rights judgment following citation as not foreclosing a parent's challenge when the parent had no constitutionally adequate notice of the proceeding. *See In re E.R.*, 385 S.W.3d 552, 555 & n.6 (Tex. 2012). The Court interpreted Texas Family Code Section 161.211(b), which provided that "[n]otwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person who is served by citation by publication is not subject to collateral or direct attack after the sixth month after the date the order was signed." Accordingly, we proceed to the due process question.

## III.    Due Process and the Right to Assert a Meritorious Defense

Having held that the EJDA does not bar the Appellants' challenge to the EDJA court's judgment as void for a deprivation of notice constituting the denial of due process, we now resolve the merits of that issue.

Appellants assert they were prevented from presenting a meritorious defense because they were not personally served with notice of the EDJA action. Appellants further argue that the trial court lacked jurisdiction over them as Interested Parties because the City's notice by publication violated their due process rights.

An *in rem* class action brought under the EDJA is binding on all residents, taxpayers, property owners residing in the territory of the issuer, and others claiming a right, title, or interest in the property or money affected by the public securities (referred to in the EDJA as "Interested Parties"). Tex. Gov't Code § 1205.041; *see also id.* § 1205.023 (proceeding is *in rem* and binding on all Interested Parties). All of these Interested Parties are automatically parties to the action, and the court's jurisdiction extends to each of them as though they were individually named and

personally served in the action. *Id*. § 1205.044. Any Interested Party can become a named party to the lawsuit by filing an answer with the court before the time set for trial. *Id*. § 1205.062(1).

Upon receipt of the EDJA petition, the trial court will set the trial date and enter an order, in the form of a notice, advising all Interested Parties of their right to appear at the trial and to show cause why the court should not grant the relief requested in petition. *See* Tex. Gov't Code § 1205.041. A copy of the notice order must be published in Travis County and the county where the issuer has its principal office. *Id*. § 1205.043. The notices must be published once in each of two consecutive calendar weeks, and the first publication in each paper must be prior to the 14th day before the trial date. *Id*. § 1205.043(b).

The parties do not dispute that the City complied with the notice provisions of the EDJA. Appellants contend they were prevented from asserting meritorious defenses because they were not personally served with notice of the bond-validation suit. The EDJA states that a bond-validation proceeding is "a class action binding on all persons" who reside or own property within the territory of the bond issuer or are taxpayers of the bond issuer. Tex. Gov't Code § 1205.023(2). Because the EDJA is an *in rem* proceeding, notice by publication is constitutionally sufficient; neither service of process nor mail notice is required. *See Jackson v. Waller Indep. Sch. Dist.*, Civ. A. No. H-07-3086, 2008 WL 818330, at *9 (S.D. Tex. Mar. 24, 2008) (interpreting Texas EDJA publication provision), *order clarified on other grounds*, 625 F. Supp. 2d 357 (S.D. Tex. 2008).

Appellants cite Chief Justice Rose's concurring opinion in *City of Magnolia v. Magnolia Bible Church*, 629 S.W.3d 471, 472 (Tex. App.—Austin 2020, no pet.), arguing that their due process rights were violated by the City's notice by publication. Initially, we note that *City of Magnolia* was a plurality opinion from

another court, with no precedential value here. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (defining horizontal stare decisis as requiring three-judge panels to follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision); *see also In re Reardon*, 514 S.W.3d 919, 923 (Tex. App.—Fort Worth 2017, orig. proceeding) (explaining that courts of appeals are not bound by precedent of other courts of appeals).

We further note that the facts in *City of Magnolia* are distinguishable from the facts in this case. In *Magnolia*, the City of Magnolia filed an EDJA action to validate a water rate ordinance applicable only to nonprofit ratepayers, knowing that several churches opposed the rate as violating their personal, religious freedom. *City of Magnolia*, 629 S.W.3d at 472. The city published notice as authorized by the EDJA and obtained a judgment, unbeknownst to the churches, which had sent a demand letter to the city during the pendency of the validation suit. *Id*. at 473. In this demand letter, the churches threatened litigation, claiming that the water rate was discriminatory, violated their rights under the Texas Religious Freedom Restoration Act, and violated their personal tax-exempt status. *Id*. The trial court granted the churches' motions for new trial in the EDJA action, and the Third Court of Appeals, in a per curiam opinion, affirmed the trial court. *Id*. at 472.

In a concurring opinion, Chief Justice Rose acknowledged that "notice by publication satisfies due process as to the parties bound by an EDJA judgment because the EDJA permits only *in rem* declarations concerning property rights[.]" *Id*. at 475. Concluding that the EDJA in that case had the "effect of extinguishing the Churches' private claims," the Chief Justice opined that, "[u]nder the particular and unique circumstances of this case, notice by publication did not satisfy the Churches' right to due process." *Id*. at 476.

23

Given the non-precedential value of a plurality opinion from another court of appeals and the distinguishing circumstances, we decline to adopt the due process analysis in the concurring opinion in *Magnolia*. While also not binding, we find the reasoning in *Jackson v. Waller I.S.D.* persuasive. *See Jackson*, 2008 WL 818330.[6] In *Jackson*, the court addressed a taxpayer challenge to a school bond election and whether a declaratory judgment issued under the EDJA deprived the federal courts of jurisdiction over the taxpayers' claims. *Id.* at *1–3. After the taxpayers challenged the bond election, the school district filed suit under the EDJA and issued a notice under the EDJA's notice provision, informing all residents and property holders of the hearing and trial in the bond-validation action. *Id.* at *2. Arguing that state courts lacked authority to enjoin *in personam* proceedings in federal courts, the taxpayers contended that the Texas EDJA court lacked jurisdiction over them because the school district failed to provide adequate notice of the EDJA action. *Id.* at *4. The taxpayers argued—similar to Appellants' argument here—that notice by publication was not sufficient "with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Id.*

Interpreting the EDJA, the *Jackson* court held that the EDJA's notice by publication was sufficient to meet constitutional due process standards. *Id.* at *10. The court contrasted an action under the EDJA, which involves public interest in bond validation, with those cases requiring individual notice, which primarily

---

[6] Although we look to decisions of the lower federal courts and other state courts, only decisions of the United States Supreme Court, the Texas Supreme Court, and prior decisions of this Court are binding precedent. *See In re Morgan Stanley & Co.*, 293 S.W.3d 182, 189–90 (Tex. 2009) (citing *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) ("While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are *obligated* to follow only higher Texas courts and the United States Supreme Court.") (emphasis original)).

involve private rights to money and real property. *Id*. at *8. The parties in *Jackson* argued that individual mail notice was required when the identities of interested parties could be determined. *Id.* The court rejected that argument, emphasizing that cases requiring individual mail notice involved private rights to money and to real property. *Id.* The private property interests in those cases presented different due process considerations than the public interest in a bond validation proceeding. *Id.* Individual defendants' rights in a bond validation action do "not bear the hallmarks of a constitutionally protected liberty or property interest." *Id.* (quoting *Denham Springs Econ. Dev. Dist. v. All Taxpayers, Property Owners and Citizens of Denham Springs Econ. Dev. Dist.*, 945 So.2d 665, 683 (La. 2006)). In light of the public versus private distinction, the court concluded that "the publication notice authorized by section 1205.043 of the EDJA was constitutionally sufficient." *Id*. at *9. The same is true here, where no private rights are in play.

We conclude that under the facts of this case the City's notice by publication did not violate Appellants' due process rights; therefore, the EDJA court had jurisdiction over the parties. *See City of Conroe*, 602 S.W.3d at 456 (declining to address due process challenge to EDJA notice requirement because EDJA does not allow declarations concerning *in personam* rights and liabilities, but "permits only *in rem* declarations concerning property rights."). Accordingly, the trial court did not err by granting summary judgment and dismissing this challenge. For the same reasons, the trial court did not err by denying Appellants' summary judgment motion. We overrule Appellants' issues with regard to this last remaining challenge and affirm the judgment.

### CONCLUSION

The trial court did not err in granting the City's motion for summary judgment and denying Appellants' motion for summary judgment. We overrule Appellants'

25

issues on appeal and affirm the judgment of the trial court.


/s/ April Farris
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris.